## IN THE COURT OF APPEALS OF IOWA

No. 14-1204
Filed February 25, 2015

IN THE INTEREST OF A.R., D.R., J.C.
and J.C.
     **Minor Children,**

**A.M., Mother,**
     Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District

Associate Judge.

A mother appeals from termination of her parental rights. **REVERSED.**

Erin M. Carr of Carr & Wright, P.L.C., Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant

Attorney General, John P. Sarcone, County Attorney, and Michael Chenoweth,

Assistant County Attorney, for appellee.

Deborah Johnson, Altoona, for father of D.R. and A.R.

William Sales of Sales Law Firm, P.C., Des Moines, for father of J.C. and

J.C.

Charles Fuson of Youth Law Center, Des Moines, attorney and guardian

ad litem for minor children.

Considered by Potterfield, P.J., and Tabor and Mullins, JJ.

**MULLINS, J.**

The mother appeals from the termination of her parental rights to four children under Iowa Code section 232.116(1)(d) (2013).[1] Although the State petitioned for termination on six different statutory grounds, the juvenile court terminated the mother's rights pursuant to subsection (1)(d) only. Because the record does not show by clear and convincing evidence that there was a child-in-need-of-assistance (CINA) adjudication in a prior proceeding or that there was a nonaccidental injury to any of the children in the current CINA proceeding, we reverse the termination of the parental rights of the mother.

## I.    BACKGROUND

In this case, the State alleged the statutory grounds for termination were Iowa Code section 232.116(1)(d), (f), (g), (h), (k) and (*l*). The juvenile court summarized the procedural background of the case as follows:

> CINA petitions for all four children filed in late January 2013. Children were all removed from Mother's care. Subsequent orders confirming removal, adjudicating children in need of assistance, and for disposition entered in Winter/Spring 2013. Court thereafter held review hearings. Children were never returned to Mother's custody at anytime throughout the case. The [C.] children were returned to Father's custody in or about October 2013 and have there remained reunited with Mr. [C.]. The [R.] children have been in other placements and as of the last court hearing, the [R.] children were in family foster care and remain there pursuant to Undersigned's orders and understandings as of this time.
> The Court was asked to and did make a permanency ruling in the CINA cases in January 2014, directing the TPRs to be filed.
> Termination hearing was held April 24, 2014.

[1] The two oldest children share a father, and the two youngest children share a father. Following termination, the juvenile court placed the older children with their father, where they have remained. The court terminated the parental rights of the younger children's father under subsection (1)(d) as well. However, the father of the two younger children does not appeal.

After identifying the children and the parents, the court made these findings:

> 8. The Mother has not addressed any of the reasons for which the children were adjudicated in the CINA cases.
> 9. The Mother has not provided drug screens.
> 10. The Mother has been largely uncooperative with any and all professionals and social workers.
> 11. The Mother's testimony from April 24, 2014 best indicates that she refuses to acknowledge any need for mental health assessment, treatment or counseling.
> 12. The record establishes that over the course of the child welfare cases, she attended approximately half of the visits with her children.
> 13. The bottom line is the Mother has been in large measure actively working against the professionals in this case, unwilling to make any changes in her own life despite obvious need in order for her to be minimally adequate as a parent to one or four children.

Upon that backdrop, the court reviewed the requirements of Iowa Code section 232.116(1)-(3) and provided this analysis:

> The Court concludes the State has proven subsection d is met as the statutory ground supporting termination as to the Mother [] and termination of her parental rights. The same statutory ground is deemed met as to Father [of the younger children] as it relates to his parental rights to his two children named herein. In the interests of time and finality the Court deems it most prudent to simply rely upon this statutory ground. The Court does not find or consider this to be a close case.

Additional facts and background will be developed below.

## II.   STANDARD OF REVIEW

We review termination of parental rights de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing

when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.*

## III. ANALYSIS

As the juvenile court chose to terminate only under 232.116(1)(d), we only consider that ground.[2] *See In re J.B.L.,* 844 N.W.2d 703, 704 (Iowa Ct. App. 2014). To terminate parental rights under Iowa Code section 232.116(1)(d), the State must show

> 1. The court has previously adjudicated the child to be in need of assistance after finding the child to have been physically or sexually abused or neglected as the result of the acts or omissions of one or both parents or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding [,and]
> 2. Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

For the mother's first issue on appeal, she argues: "The State has failed to prove by clear and convincing evidence that the Mother was offered or received services to correct the circumstances which led to the adjudication or that the circumstances still exist despite the offering or receipt of services." Her argument focuses on her claims that the visitation arrangements were inadequate to allow her to demonstrate her parenting skills and to progress toward reunification with her children.

---

[2] The juvenile court made a specific finding that this was not a close case, but did not rule on the petition allegations under section 232.116(1)((f), (g), (h), (k) or (*l*).

In order to determine what circumstances led to the adjudication and required correction, we look to the adjudication order. The juvenile court made findings of fact which included:

> 3. There is clear and convincing evidence to support the allegations of the Petition(s) & the children are adjudicated in need of assistance pursuant to Iowa Code Section(s) 232.2(6) and the aid of the Court is required, per ground
>
> 4. The Court makes the following specific findings of facts: Exh. 1 & 2 dated 3/12/13 evince significant concerns associated with failure to supervise children & allowing unvetted & inappropriate persons to provide care (note: court advised investigation of SA re child [Jo.C.] unfounded).

The court did not specify under which paragraph of section 232.2(6) it found the children were CINA.[3] On our de novo review we have examined the exhibits identified in the findings of fact. Exhibit 1 is a Child Protective Service Assessment Summary as to children Jo.C. and Ja.C. The report was founded as to both children for denial of critical care and failure to provide proper supervision. Exhibit 2 is a Child Protective Service Assessment Summary as to children D.R., Ja.C., Jo.C., and A.R. The report concludes the allegation of denial of critical care, failure to provide proper supervision is confirmed; the allegation of physical abuse is not confirmed; and the allegation of "allows access to obscene material" is not confirmed.

Pursuant to the terms of the adjudication order and the exhibits referenced in the order, the circumstances which existed at the time of the adjudication were denial of critical care and failure to provide proper supervision. This would seem

---

[3] The petition to terminate parental rights alleges "the children were adjudicated under Iowa Code Section 232.2(6), b, c(2) and n." We find no such paragraph identifications in the CINA ruling.

to support a CINA determination under section 232.2(6)(c)(2) and (n). These sections provide a child in need of assistance is a child:

> (c) Who has suffered or is imminently likely to suffer harmful effects as a result of any of the following:
>> (1) . . . .
>> (2) The failure of the child's parent, guardian, custodian, or other member of the household in which the child resides to exercise a reasonable degree of care in supervising the child.
> . . . .
> (n) Whose parent's or guardian's mental capacity or condition, imprisonment, or drug or alcohol abuse results in the child not receiving adequate care.

Iowa Code § 232.6.

The court at adjudication made no finding of physical abuse or neglect or imminent likelihood of abuse or neglect as would be required under section 232.2(6)(b); and on our de novo review we find none. We next focus on whether the CINA findings with which we agree—denial of critical care and failure to provide proper supervision—could satisfy the requirements of a section 232.116(1)(d) termination.

In a CINA case, not a termination case, our supreme court explained: "a CINA determination under section 232.2(6)(b)[4] may lead to termination of parental rights under section 232.116(1)(d), whereas a CINA determination under section 232.2(6)(c)(2) cannot." *In re J.S.*, 846 N.W.2d 36, 41 (Iowa 2014). In *J.S.*, the court was concerned with deciding the imminent likelihood of physical harm for a CINA determination under section 232.2(6)(b). As part of its analysis, the court explained:

---

[4] Finding a parent "has physically abused or neglected the child, or is imminently likely to abuse or neglect the child."

> "[P]hysical abuse or neglect" and "abuse or neglect" are terms of art in this context. Within chapter 232, "physical abuse or neglect" and "abuse or neglect" mean "any nonaccidental physical injury suffered by a child as the result of the acts or omissions of the child's parent, guardian, or custodian or other person legally responsible for the child." *Id.* § 232.2(42).

*Id.*

Section 232.116(1)(d) requires that "[t]he court has previously adjudicated the child to be in need of assistance after finding the child to have been physically or sexually abused or neglected." Applying the definition of "physical abuse or neglect" from section 232.2(42) as explained in *J.S.*, to our section 232.116(1)(d) analysis, it is plain to see that a termination under (d) requires a physical injury.[5] In other words, we may not rely on the term "or neglected," as the supreme court has explained that the term of art "physical abuse or neglect" requires a nonaccidental physical injury.[6]

Even if we were to assume the juvenile court's CINA adjudication was based on a section 232.2(6)(b) finding of imminent likelihood of physical harm (which we do not), the record before the court in its CINA determination and the record before us in the termination case does not support a finding of nonaccidental physical injury. Accordingly, the first prong of section 232.116(1)(d)(1) is not satisfied. In the absence of a CINA determination that satisfies (d)(1), we have no identification of statutorily authorized circumstances which require correction under (d)(2).

---

[5] We are mindful that a termination under section 232.116(1)(d) may also be supported by a finding of sexual abuse, but need not analyze that term under the facts of this case.
[6] In the case of *In re A.B.*, 815 N.W.2d 764 775 (Iowa 2012), the supreme court affirmed a section 232.116(1)(d) termination relying on a neglect finding in the CINA determination. We discuss that case later in this opinion.

We are mindful that the mother in this case did not raise this precise argument under (d)(1). But on our de novo review of the issue she raised under (d)(2), the State cannot show that it satisfied the requirements of (d)(2) as the predicate circumstances set forth in (d)(1) were not satisfied. We cannot ignore or countenance a termination under a statutory ground when after a de novo review we discover necessary elements have no facts at all in support. "[I]t is our responsibility to review the facts as well as the law and determine from the credible evidence rights anew on those propositions properly presented, provided the issue has been raised and error, if any, preserved in the trial proceedings. While weight will be given to findings of the trial court, this court will not abdicate its function as trier de novo on appeal." *In re Marriage of Full*, 255 N.W.2d 153, 156 (Iowa 1977).

Our analysis would end here but for some additional allegations in both the CINA petition and the termination petition. The CINA petition alleges that the father of two of the children "had his parental rights terminated to another child in 2012," and alleges that all but one of the children in the present case "have been previously involved with Juvenile Court." The petition to terminate parental rights alleges two of the four children "were previously under the jurisdiction of this court from February through December of 2009, due to mother's mental health issues and chronic THC usage."

Section 232.116(1)(d) uses the term "has previously adjudicated" the child to be a CINA and the clause "the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a

finding." In our effort to give effect to each provision of the statute implicated by the facts of the case, we recognized that the allegations of the CINA petition and the termination petition shown above may have been seeking to rely on either a CINA adjudication made previous to the current proceedings and/or the prior termination of parental rights of the father of two of the four children. This possibility prompted this court to raise sua sponte a question concerning "the difference, if any, between the terms, 'previously adjudicated' and 'has been adjudicated,'" as those phrases are used in section 232.116(1)(d). The court requested and the parties provided additional briefing on the issue.

Section 232.116(1)(d) requires that "[t]he court *has previously adjudicated* the child to be in need of assistance." Iowa Code § 232.116(1)(d)(1) (emphasis added). Nine subsequent subparagraphs require that the child "*has been adjudicated*" a child in need of assistance. *See id.* § 232.116(1)(e), (f), (g), (h), (j), (k), (*l*), (m), and (n) (emphasis added). One subparagraph requires that the child "meets the definition of child in need of assistance." *See id.* § 232.116(1)(d)(i). The remaining subparagraphs do not require any CINA determination. *See id.* § 232.116(1)(a), (b), (c), and (o).[7]

---

[7] A summary of the essential elements of subsections (a) through (o) of section 232.116(1) helps further illustrate the significance of the requirements for each possible ground for termination:

    (a) Parents' consent
    (b) Child has been abandoned or deserted
    (c) Newborn infant voluntary released
    (d) Court **previously adjudicated** CINA, parents offered or received services, circumstance continues to exist
    (e) Child **has been adjudicated** CINA, removed for statutory time, parents lack significant and meaningful contact

In 1986, our supreme court decided the case of *In re N.H.*, 383 N.W.2d 570 (Iowa 1986), and applied Iowa Code section 232.116(3) (1985), an early version of what is now section 232.116(1)(d).  The court reversed a decision of the juvenile court and stated:

> Our review of the record leads us to conclude that the mother's petition for termination [of the father's parental rights] should have been granted.  In separate proceedings, the juvenile court has already adjudicated both N.H. and C.H. to be children in need of assistance.  The juvenile court in those proceedings found there was clear and convincing evidence that the father engaged in a rigid pattern of extraordinary emotional abuse on his stepchildren and N.H. for a period of years and that he engaged in similar abuse of his older natural children.  Further, the children were frequent recipients of torturing physical abuse administered by the father.  C.H. was born during the pendency of those proceedings and was adjudicated a child in need of assistance based on the father's acts toward the other children in the family.  The court noted that the female children had been sexually abused by the father and that he

---

> (f) Child four years or older ***has been adjudicated*** CINA, removed for statutory time, cannot be returned
> (g) Child ***has been adjudicated*** CINA, court has terminated as to another child of family, parent unable or unwilling to respond to services, additional delay would not correct
> (h) Child three years or younger ***has been adjudicated*** CINA, removed for statutory time, cannot be returned
> (i) Child ***meets CINA definition*** based on abuse or neglect, significant risk to life or imminent danger, services would not correct in reasonable time.
> (j) Child ***has been adjudicated*** CINA, parent imprisoned for crime against child and unlikely to be released for at least five years,
> (k) Child ***has been adjudicated*** CINA, parent with mental illness and dangerous, prognosis prevents return of child in reasonable time
> (*l*) Child ***has been adjudicated*** CINA, parent with severe substance abuse and dangerous, and prognosis prevents return of child in reasonable time
> (m) Child ***has been adjudicated*** CINA, parent convicted of felony and imprisoned for abuse or neglect of child
> (n) Child ***has been adjudicated*** CINA, parent convicted of specified child endangerment crimes, imminent danger to child
> (o) Parent convicted of felony sex offense on minor, other circumstances, minimum confinement of at least five years.

*See* Iowa Code § 232.116(1) (emphasis added).

> also had some preoccupation with the sexuality of the male children. The court commented that unless there was a remarkable and unexpected change in the father's psychological condition, the children were not safe from his imaginative ways of abusing the children.
>
> . . . The court of appeals affirmed the juvenile court's decisions in an unpublished opinion. *In re R.E.,* 355 N.W.2d 64 (Iowa 1983). . . .
>
> Also in the record in this appeal is a report of counseling received by the father after the CINA adjudications. . . .
>
> . . . The evidence is clear and convincing that the services offered to and received by the father have not corrected the situation which led to the physical abuse of N.H. by the father.

*N.H.*, 383 N.W.2d at 573-74[8] (holding modified on other grounds by *In re P.L.*, 778 N.W.2d 33 (Iowa 2010)).

In January 1985, the mother filed a petition to terminate the father's parental rights to N.H. and C.H. *Id.* at 571. In August 1982, the juvenile court had ordered the father to remove himself from the home based on findings he had abused N.H and her two half-siblings. In February 1983, N.H. and the half-siblings were adjudicated CINA. A month later, C.H.[9] was adjudicated CINA based on the earlier CINA adjudication of N.H. and the two half-siblings. Following the father's appeal from those 1983 CINA adjudications, the court of appeals affirmed the juvenile court's decisions. *Id. at 573.* The significance of *N.H.* to our analysis is that the CINA adjudications were in proceedings commenced by the State and separate from the termination case commenced by the mother. Thus, a court had previously adjudicated N.H. and C.H. to be CINA, and a subsequent termination proceeding was commenced *without* a current or

---

[8] A matter of contention in the *N.H.* case was the timing of the offer or receipt of services intended to correct the circumstances which led to the adjudications. *N.H.*, 383 N.W.2d at 570-574.

[9] C.H. was born after the father had been ordered to remove himself from the home.

new CINA proceeding or allegation. This result follows a plain reading of what was then Iowa Code section 232.116 (1985), and is our current section 232.116(1)(d).

More recently, our supreme court has decided a case which, without citing *N.H.*, applied the clause "previously adjudicated" to a current proceeding. In the case of *A.B.*, the supreme court affirmed a juvenile court order terminating a father's parental rights under Iowa Code section 232.116(1)(d).[10] 815 N.W.2d at 764. The father's rights to another child had previously been terminated. *Id.* at 766. In April 2011, the children were adjudicated CINA based on findings that placement in "the home would be contrary to the children's welfare because of improper supervision and exposure to illegal drugs." *Id.* at 767. Services were offered and received by the father. *Id.* at 776.

In September 2011, the State filed a petition to terminate the parental rights of the father. *Id.* at 768. After a hearing, the court terminated the parental rights to two children pursuant to Iowa Code section 232.116(1)(d), (g), (h), and (*l*). *Id.* at 770. The father appealed. *Id.* at 772. After the court of appeals issued a ruling to reverse the juvenile court, the supreme court granted the State's request for further review. *Id.* at 772-73. The supreme court vacated the court of appeals decision and found termination was proper under section 232.116(1)(d). *Id.* at 776. After quoting section 232.116(1)(d), the court stated:

---

[10] The supreme court reversed a decision by the Iowa court of appeals which had reversed the juvenile court. In its termination ruling, the juvenile court had relied on Iowa Code section 232.116(1)(d), (g), (h), and (*l*). *In re A.B.,* No. 12-0133, 2012 WL 1247106 at *4 (Iowa Ct. App. Apr 11, 2012).

There is no dispute that A.B. and S.B. were adjudicated as CINA based on findings they had been neglected by both parents. In its uncontested CINA adjudication order of April 20, 2011, the juvenile court concluded that "placement outside the parental home [wa]s necessary because continued placement in or a return to the home would be contrary to the children's welfare because of improper supervision and exposure to illegal drugs." *The fighting issue here is whether this circumstance that led to the CINA adjudication continued to exist despite the offer of services to [the father].*

*Id.* at 775 (emphasis added).

As shown by the emphasis in the quote above, the fighting issue in *A.B.* was "whether [the] circumstance that led to the CINA adjudication continued to exist despite the offer of services to [the father]."[11] We cannot ignore, however, that our supreme court determined that the CINA adjudication which formed the predicate to the termination was the adjudication made in the course of the present case.[12] We must try to reconcile what appear to be different applications of the "previously adjudicated" clause between the cases of *N.H.* and *A.B.*

The fact pattern of *N.H.*, and the analysis by the court, support a conclusion that 232.116(1)(d) was designed to permit a termination proceeding without the need for a current CINA adjudication if the other prerequisites have been satisfied. Most of the remaining subparagraphs of 232.116(1) allow for termination if the child "has been adjudicated" CINA, as opposed to the

---

[11] The parties apparently did not raise an issue concerning whether a CINA adjudication based on neglect would support a termination under section 232.116(1)(d). *Compare A.B.,* 815 N.W.2d at 775 *with J.S.,* 846 N.W.2d at 41.

[12] We acknowledge that as a matter of technical court filings, the CINA case is a separate court file from the termination case, having a separate case number. As a practical matter, however, in most termination cases the case flows continuously from a CINA case. *Cf. N.H.,* 383 N.W.2d at 573.

subparagraph (d) requirement that the court "has previously adjudicated" CINA.[13]

In the context of all other subparagraphs of 232.116(1) and the holding in *N.H.*,

---

[13] Nine subsequent subparagraphs require that the child "*has been adjudicated*" a child in need of assistance. *See id.* § 232.116(1)(e), (f), (g), (h), (j), (k), (*l*), (m), and (n) (emphasis added). One subparagraph requires that the child "meets the definition of child in need of assistance." *See id.* § 232.116(1)(d)(i). The remaining subparagraphs do not require any CINA determination. *See id.* § 232.116(1)(a), (b), (c), and (o); and footnote 7 above.

A review of the legislative history of section 232.116(1)(d) adds perspective to our analysis. In 1978, the Iowa Legislature completely revised the juvenile justice laws effective July 1, 1979. 1978 Iowa Acts ch. 1088 § 65. The section of that legislation which was the predecessor to our current section 232.116(1)(d), and was the statute in effect when *N.H.* was decided, read as follows:

3. The court finds that:

a. One or both parents has physically or sexually abused the child; and

b. The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or sexually abused as the result of the acts or omissions of the parent or parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding; and

c. There is clear and convincing evidence that the parents had received or were offered services to correct the situation which led to the abuse.

Iowa Code § 232.114 (1979), renumbered as § 232.116 in 1981.

On May 7, 1986, just weeks after the March 19, 1986 *N.H.* decision, the legislature amended paragraph (c) of section 232.116(3) to read as follows:

c. There is clear and convincing evidence that the parents had received or were offered <u>but refused</u> services <u>or failed to cooperate</u> to correct the situation which led to the abuse <u>or that the parents had received services to correct the situation which led to the abuse but the services did not correct the abusive situation.</u>

1986 Iowa Acts ch. 1186 § 11 (underlines to signify additions). The preface to that legislation stated, in part: "providing for involuntary termination of parental rights under certain conditions involving ineffectiveness of corrective services." The 1986 amendment appears to address some of the concern raised in *N.H.* regarding timing and effectiveness of offered services. The legislation made no amendments in response to the *N.H.* interpretation that a current termination action was appropriately reliant on an earlier CINA adjudication in a separate proceeding.

In 1987, the legislature again amended the section and re-numbered the section as 232.116(1)(c) but made only minor wording changes.

In 1989, the legislature, struck section 232.116(1)(c) and re-wrote it as follows:

c. The court finds that both of the following have occurred:

(1) The court has previously adjudicated the child to be a child in need of assistance after finding the child to have been physically or

termination under subparagraph (d) can properly be based on an adjudication in a prior proceeding separate from the current proceedings leading to termination.

From a review of the court of appeals opinion in *A.B.*, and the subsequent supreme court ruling vacating the court of appeals, it would appear that the issue of the meaning of the term "previously adjudicated" was not raised or argued. We repeat the supreme court's identification of the fighting issue: "The fighting issue here is whether this circumstance that led to the CINA adjudication continued to exist despite the offer of services to [the father]." *Id.* at 775. The fact pattern in *A.B.* and the conclusion reached by the court support a conclusion the "previously adjudicated" CINA could be also in the same proceedings.

We note anecdotally that numerous unreported opinions of the court of appeals have affirmed (1)(d) terminations without any citation to *N.H.* or any analysis as to the significance, if any, of the clause "previously adjudicated." We also note that (1)(d) termination allegations frequently appear in termination petitions—together with multiple other statutory grounds—without any allegation of a CINA petition having been granted in a previous case proceeding. *See, e.g., In re C.W.*, No. 14-1501, 2014 WL 5865351, *1 (Iowa Ct. App. Nov. 13, 2014); *In*

---

sexually abused or neglected as the result of the acts or omissions of one or both parents, or the court has previously adjudicated a child who is a member of the same family to be a child in need of assistance after such a finding.

    (2) Subsequent to the child in need of assistance adjudication, the parents were offered or received services to correct the circumstance which led to the adjudication, and the circumstance continues to exist despite the offer or receipt of services.

1989 Iowa Acts ch. 229, § 8.

    Then in 2001, the legislature added a paragraph to section 232.116(1) which required renumbering former 232.116(1)(c) as our current version of section 232.116(1)(d).

*re E.R.*, No. 08-0333, 2008 WL 1885617, *1 (Iowa Ct. App. Apr. 30, 2008); *In re S.E.*, No. 01-1815, 2002 WL 31640707, *1 (Iowa Ct. App. Nov. 25, 2002).

We reconcile *N.H.* and *A.B.* by concluding that our supreme court has determined a "previous adjudication" should be interpreted to mean an adjudication in *either* a prior or the current proceeding so long as the adjudication is previous to the filing of the termination petition.

In the case now before us, having already determined there was no finding of abuse in the current proceeding which would satisfy section 232.116(1)(d), we have searched the record for evidence of a CINA adjudication in a prior proceeding. The State alleged in the removal petition, "[T]hese children have previously been involved with [the] Juvenile Court." The State also asserted in its termination petition the children "were previously under the jurisdiction of this court from February through December of 2009, due to the mother's mental health issues and chronic THC usage." During the termination hearing, the State asked and the mother acknowledged that "for the two older children, this is the second time that they've had CINA cases." The mother also stated during her hearing testimony that she had five, rather than four, children. The DHS's report to the court stated, "Since the opening of the service case in 2009, [the mother] has been offered many services." Finally, the mother made statements to the service providers that she believed she would get the children back because they had been removed and returned to her before.[14]

---

[14] We note that the younger two children's father has had his parental rights terminated to a child of his with a different mother. The juvenile court took judicial notice of that

On our de novo review of the record, we find some indication a prior CINA case existed. Apparently, the family previously was involved in some child welfare proceedings, but the record does not reflect whether there was a CINA adjudication in those proceedings, let alone whether there was a finding of physical or sexual abuse or neglect as required under section 232.116(1)(d)(1). In the absence of clear and convincing evidence of a previous adjudication, and in the absence of evidence of circumstances which led to an adjudication, we have insufficient evidence upon which to evaluate what services were offered or received and for what purpose.

Therefore, on the record before us and the grounds determined by the juvenile court in its termination order, we reverse the termination of mother's parental rights for lack of clear and convincing evidence (1) that there was a CINA adjudication in a prior proceeding that satisfies section 232.116(1)(d)(1) and (2) that there was a nonaccidental injury to any of the children in the current CINA proceeding.[15] We need not address the mother's remaining appeal issue.

We will frame and address one remaining issue generated by the State and by the dissent: Should we terminate the mother on a ground pled in the petition but upon which the juvenile court did not rely?

The State's petition to terminate alleged five separate statutory grounds in its petition to terminate: section 232.116(1)(d), (f), (h), (k) and (*l*). The juvenile judge, per Iowa Rule of Civil Procedure 1.904(1) made findings of fact,

---

case file but did not mention it in the termination ruling. Further, we do not regard that child to be a "member of the same family" for the purposes of paragraph (1)(d).

[15] As the determination regarding section 232.116(1)(d)(1) is dispositive, we cannot reach section 232.116(1)(d)(2).

conclusions of law, and a ruling which relied on only one ground, section 232.116(1)(d), to terminate. The State did not file a rule 1.904(2) motion or make any other effort to obtain a ruling on the other four grounds it had alleged supported termination.

The mother appealed the court's ruling. The State did not cross-appeal seeking appellate review of the juvenile court's failure to find that termination was proved under any ground other than (d). The mother was required to follow our appellate rules governing appeals of termination cases, including the use of form 5 of Iowa Rule of Appellate Procedure 6.1401. The rule directed her to identify and argue only those code sections upon which her rights were terminated; that is, those as ordered by the juvenile court. The State responded to her petition on appeal, but included a statement that "[i]t is clear that termination of the mother's parental rights could also have been ordered pursuant to Iowa Code Section 232.116(1)(f) and (h) for the reasons stated herein for termination pursuant to Iowa Code Section 232.116(1)(d)."[16] The State's response was not a cross-appeal, arguably went beyond the issues raised by the mother, and per rule 6.203, the mother was not allowed to reply.

As we indicated above, we requested and the parties provided additional briefing on the difference between "previously adjudicated" and "has been adjudicated." The parties were given the same deadline and were not given an opportunity to respond to the brief of the other party. The mother's brief

---

[16] We note the State limits its request to affirm on only two of the remaining four grounds that it had pled in its petition, apparently acknowledging it had alleged two other grounds that were not supported by the evidence.

attempted to respond to the issue on which we requested briefing. The State's brief also responded to the issue, but then, perhaps realizing that the termination was in jeopardy, went beyond the issue on which we requested briefing and offered an alternative argument for affirming the juvenile court. It argued we should rely on grounds which the State had alleged in its petition to terminate but upon which the juvenile court had made no findings and upon which it did not rule. On the last page of the State's brief, and ironically after arguing that the mother had not preserved error on her appeal issues, the State argued: "The record also shows that the termination petition relied upon Iowa Code Sections 232.116(l)(f), (h), (k) and (*l*). The appellate court could affirm termination of the mother's parental rights pursuant to Iowa Code Sections 232.116(l)(f) and (h). *In re T.N.M.,* 542 N.W.2d 574, 575 (Iowa Ct. App. 1995)."

The mother appealed the termination making an argument based on the one ground upon which the juvenile court relied. Of course, she was limited by the rules to only that one ground and it would have been improper for her to have argued any ground upon which the juvenile court did not rely. In this ruling, on our de novo review of the issue properly raised on appeal, we have found there is insufficient evidence to support a termination under section 232.116(1)(d). The State argues that we should, in effect, expand our review to a trial de novo: look at the entire record and find anew the facts that the juvenile court did not find and make our own independent ruling on statutory grounds about which the juvenile court made no determination. The State argues we should affirm on a statutory

ground on which the mother would have no opportunity to respond, and from which she would have no opportunity for appeal.

The unfairness of the State's argument can be illustrated if we look at this situation in the following way. Iowa requires parties to preserve error at the district court, and has expressly declined to follow the "plain error" rule. *State v. Rutledge*, 600 N.W.2d 324, 325 (Iowa 1999). "[W]e do not recognize a 'plain error' rule which allows appellate review of constitutional challenges not preserved at the district court level in a proper and timely manner." *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997). "Even issues implicating constitutional rights must be presented to and ruled upon by the district court in order to preserve error for appeal." *In re K.C.,* 660 N.W.2d 29, 38 (Iowa 2003). Our supreme court has also stated: "[W]e hold rule 179(b) applies to juvenile court CINA proceedings. By failing to timely file a rule 179(b) motion in juvenile court, [the mother] waived both her due process and statutory challenges to the deficiencies of the court's dispositional order." *In re A.M.H.,* 516 N.W.2d 867, 872 (Iowa 1994) (former rule 179(b) is now rule 1.904(2)).

If the case before us were one in which the juvenile court had terminated under two statutory grounds (call them A and B), and the mother only appealed on A, the State would argue that we must affirm on ground B since no appeal was taken on it.[17] But, what if, while limiting our examination to issue A, we concluded that termination could not be affirmed on that ground, and we discovered a plain error on issue B which demonstrated that the State had not

---

[17] See, *e.g., In re A.J.,* 553 N.W.2d 909, 911 (Iowa Ct. App. 1996) *overruled on other grounds by In re P.L.,* 778 N.W.2d 33 (Iowa 2010).

met its burden of proof to terminate on either ground, thus concluding that the case should be reversed, even on a ground not argued by the mother? The State would no doubt object, insisting that we could not rely on a ground not properly raised on appeal, even though the facts clearly did not support termination. The State might be correct, because we require parties to preserve error at the trial level and properly raise issues on appeal, and we do not follow the plain error rule.

We do not follow the plain error rule, but the State asks us to follow a "plainly correct" rule, even when the mother has had no opportunity to respond. The State is asking us to affirm on an issue which it did not preserve via a rule 1.904(2) motion and on which it did not file a cross-appeal.[18] As such, the State did not preserve the issue for appellate review. Further, the State raised the issue in response to the petition and in the additional briefing, knowing the mother had no opportunity to argue in defense of the allegations.

The State cites a reported decision from this court that appears to support its position, the case of *In re T.N.M.,* 542 N.W. 574, 575 (Iowa Ct. App. 1995). The dissent cites to a number of cases that are not termination-of-parental-rights cases,[19] and cites two reported termination cases: *In re Robbins,* 230 N.W.2d

[18] The dissent points out the State, as the prevailing party, was not required to file a cross-appeal or rule 1.904(2) motion to argue a different ground for affirmance on appeal. Nonetheless, as we explain later in this opinion, given the limitations of the expedited procedures specific to termination appeals, the manner in which this matter was raised in our court did not afford the mother any opportunity to respond.

[19] *Regent Ins. Co. v. Estes Co.*, 564 N.W.2d 846, 848 (Iowa 1997); *Midwest Mgmt. Corp. v. Stephens*, 353 N.W.2d 76, 78 (Iowa 1984); *Israel v. Farmers Mut. Ins. Ass'n*, 339 N.W.2d 143, 146 (Iowa 1983); *Citizens First Nat'l Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980).

489, 491 (Iowa 1975), as well as *T.N.M.*, 542 N.W.2d 574. The dissent also cites one unreported termination case, *In re S.Z*, No. 03-1237, 2003 WL 22346186, at *3 (Iowa Ct. App. Oct. 15, 2003), and one unreported CINA case, *In re J.B.*, No. 08-1557, 2009 WL 1140492, at *2 (Iowa Ct. App. Mar. 11, 2009).

The cited cases that are not termination cases, and the reported termination cases that pre-date the expedited termination appeals procedures established in 2002—*T.N.M.* and *Robbins*—are cases that would have allowed full briefing: brief, responsive brief, and reply brief. It is not uncommon in fully-briefed cases for a party to argue on appeal that the appellate court should affirm a trial court decision on a ground upon which the trial court did not rely. If such an argument were raised by appellant in its brief, the appellee would have a chance to respond. If raised by appellee in a responsive brief, the appellant would have an opportunity to respond in its reply brief. This procedure provides at least some semblance of due process: an opportunity to be heard, by brief. From our review of the cases cited, we cannot be sure that is what transpired in each of those cases, but we know that those opportunities at least existed in each case under traditional briefing rules. Due process requires that the parties have an "opportunity to be heard," whether or not they exercise that opportunity.

On the other hand, since 2002 our appellate rules governing termination cases have limited the appellant's brief—now called a petition on appeal—to cite the statutes under which the court terminated the parental rights, and to argue those issues briefly, limiting the petition to twenty pages (excluding attachments). The appellee then files a response to the petition. No reply briefs are allowed.

These procedures allow the parties to appeal expeditiously, and the appellate court to hone in quickly on the issues on appeal. The court may allow full briefing, but absent full briefing, the petitioner on appeal (most often the terminated parent) has no opportunity to be heard on any other issue raised by the appellee (most often the State).

The unreported termination case and the unreported CINA case cited by the dissent were decided under the expedited rules referenced above. The termination case, *In re S.Z.*, 2003 WL 22346186, at *1, involved a mother's appeal claiming "the State did not meet its burden of proof . . . on any of the grounds in the petition for termination." The State's petition for termination had alleged the mother's rights should be terminated under section 232.116(1)(b), (g), (i), and (k). *See S.Z.*, 2003 WL 22346186, at *1. The petition listed as reasons for termination, the language from section 232.116(1)(b), (d), (e), (f) and (i), but without citation to paragraphs (d), (e), or (f). The juvenile court terminated the mother's rights under section 232.116(1)(b), (g), (i), and (k). The State conceded the rights should not have been terminated under (g) or (k), but sought to affirm under (d), (e) and (f) because the reasons set forth in the petition included the statutory language from those paragraphs, even though neither the petition nor the juvenile court order cited to those paragraphs. *Id.* at *2.

Our court found that termination was not proper under any paragraph of subsection 232.116(1) upon which the juvenile court had relied, but proceeded to affirm under section 232.116(1)(f). which had not been cited in the petition (but for which there were factual allegations) and had not been cited by the juvenile

court. *Id.* at *1. If this were a reported decision of our court, it would have precedential value; but as an unreported decision we are not bound by its conclusion.

The other juvenile court case cited by the dissent, *In re J.B.*, is a CINA case that was remanded for full briefing. 2009 WL 1140492, at *1. This case was decided after the 2002 rules change, but because of the opportunities provided by full briefing as discussed above, we do not find it controlling.

Also influencing our analysis is this familiar principle: "While the district court terminated the parental rights on more than one statutory ground, we only need to find grounds to terminate parental rights under one of the sections cited by the district court in order to affirm the district court's ruling." *In re A.J.,* 553 N.W.2d 909, 911 (Iowa Ct. App. 1996) *overruled on other grounds by P.L.,* 778 N.W.2d 33. That principle has been cited by 107 cases in Iowa according to Westlaw's citation headnote service. One of those cites is to the case of *In re R.K.*, 649 N.W.2d 18, 19 (2002). That case kept the essence of the principle, but its slightly reworded version has been cited another fifty-four times, and as recently as August 2014. *See In re Q.E.,* No. 14-0783, 2014 WL 3939918, at *3, 856 N.W.2d 2 (Iowa Ct. App. Aug. 13, 2014). We do not believe the principle should be re-written to effectively say, "We need not find any grounds which were approved by the court, but only need to find grounds to terminate under any section pled by the State or for which factual allegations were made by the State." In effect, that is what the State is asking us to do.

Parental rights are among those that are the most guarded in our society. They are rights of constitutional significance. *See In re C.M.*, 652 N.W.2d 204, 211 (Iowa 2002). Our legislature has developed a sophisticated statutory scheme that provides for the protection of children while honoring parental rights. Our court rules require a trial court to issue findings, conclusions of law, and a ruling. Iowa R. Civ. P. 1.094(1). Those same rules allow a party to request the court to rule on matters upon which it has not ruled. Iowa R. Civ. P. 1.904(2). Our appellate rules and practice allow a de novo review in certain cases on issues properly preserved. They allow cross-appeals. The State relies on the case of *T.N.M.* to bypass the requirements of several of our rules, which are designed to ensure due process and fundamentally fair procedures. For us to follow *T.N.M.* and allow shortcuts in termination-of-parental-rights cases under our expedited procedures would denigrate safeguarding procedures and offend fair play, fundamental fairness, and due process. We, therefore, distinguish this case from *T.N.M.* and other reported cases that hold a court may affirm a trial court on any ground pled and proven, even though not the basis of the trial court's decision.[20] We hold that parental rights cases in which a juvenile court has declined to terminate—either directly or by omission—under a statutory provision that was alleged in the State's petition to terminate may not on appeal be affirmed on the basis of that statutory provision if the appeal is subject to the

---

[20] We acknowledge our supreme court reserves the right to reverse itself, but respectfully determine we have the responsibility to distinguish principles on which the supreme court has not specifically ruled. *See State v. Eichler*, 83 N.W.2d 578, 578 (Iowa 1957).

limited briefing rules now in effect, unless full briefing is allowed either by request of the parties or sua sponte by the appellate court.

**REVERSED.**

Potterfield, P.J., concurs; Tabor, J., dissents.

**TABOR, J.** (dissenting).

I respectfully dissent. I would affirm the termination of the mother's parental rights under Iowa Code sections 232.116(1)(f) and (h); these grounds were alleged and proven by the State at the termination hearing, and argued as an alternative basis for affirming on appeal.

The State's petition seeking to terminate the mother's parental rights cited section 232.116(1)(d), (f) (as to Ja.C., Jo.C. and D.R. who were all four years of age or older), (h) (as to A.R. who was three years of age or younger), (k), and (*l*). The juvenile court decided the State had proved paragraph (d) as a statutory ground for termination, and did not address the other potential grounds.

The majority limits its analysis to the evidence supporting paragraph (d). Under the general rule of appellate review, "[w]e are obliged to affirm an appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding." *See Citizens First Nat'l Bank v. Hoyt*, 297 N.W.2d 329, 332 (Iowa 1980); *see also Regent Ins. Co. v. Estes Co.*, 564 N.W.2d 846, 848 (Iowa 1997) (restating "well-established" proposition that appellee may seek to save judgment on alternative basis presented to the trial court); *Midwest Mgmt. Corp. v. Stephens*, 353 N.W.2d 76, 78 (Iowa 1984) (noting supreme court "will affirm a decree in equity if it can be sustained upon any pleaded basis which is supported by the record, regardless of the basis used by the trial court"). Our court has applied this principle in termination of parental rights cases. *See T.N.M.,* 542 N.W.2d at 575 (finding clear and convincing evidence for termination on voluntary consent ground when juvenile court

rejected that basis and terminated on abandonment ground); *In re J.B.*, No. 08-1557, 2009 WL 1140492, at *2 (noting we can "affirm the juvenile court on any ground pled, even if was not a ground relied on by the court"); *In re S.Z*, No. 03-1237, 2003 WL 22346186, at *3 (Iowa Ct. App. Oct. 15, 2003) (citing *Israel v. Farmers Mut. Ins. Ass'n,* 339 N.W.2d 143, 146 (Iowa 1983) ("In reviewing de novo, we will affirm if there is a proper basis for the decree entered by the trial court, even though the reasons for affirming are different than those upon which the trial court relied.")); *see also Robbins*, 230 N.W.2d at 491 (finding it "unnecessary to decide whether the second ground alleged in the petition properly stated a basis for termination under section 232.41(2)(d), which, although not relied on by the trial court, would have justified termination").

The majority does not directly overrule *T.N.M.*, but appears to find it is no longer viable law after the adoption of the expedited appellate rules for termination-of-parental-rights cases. The majority engages in a useful discussion of the due process rights afforded parents in child welfare cases. But I find it unhelpful to accuse the State of "bypassing requirements" and taking "shortcuts" which "offend fair play" when our case law has not addressed the interplay between the expedited appellate rules and the accepted principles of appellate practice. For instance, the majority faults the State for not filing a cross-appeal or asking the juvenile court to enlarge its findings under Iowa Rule of Civil Procedure 1.904(2). But under the existing law, the State was not required to file a cross-appeal. "It is well-settled law that a prevailing party can raise an alternative ground for affirmance on appeal without filing a notice of cross-

appeal, as long as the prevailing party raised the alternative ground in the district court." *Duck Creek Tire Serv., Inc. v. Goodyear Corners, L.C.*, 796 N.W.2d 886, 893 (Iowa 2011). The State raised the alternative statutory grounds for termination in the juvenile court and presented clear and convincing evidence in support of their elements. Likewise, under existing law, the State, as the prevailing party, was not required to file a motion to enlarge the juvenile court's findings. *See Johnston Equip. Corp. of Iowa v. Indust. Indem.*, 489 N.W.2d 13, 16–17 (Iowa 1992) (overruling case which required successful party to ask trial court to enlarge its findings to address second basis for recovery).

The State also raised the alternative grounds for affirming the juvenile court at its earliest opportunity on appeal. The State argued in its original response to the mother's petition on appeal:

> The termination petition did not rely totally on Iowa Code section 232.116(1)(d) for termination of the mother's parental rights. It is clear that termination of the mother's parental rights could also have been ordered pursuant to Iowa Code section 232.116(f) and (h) . . . . Because the circumstances that led to the adjudication had not been corrected, the children could not safely be returned to the mother's care at the present time.

The mother admitted as much at the termination hearing. The mother acknowledged she was not saying "Give me my kids back today," but was asking for another six months so that she could secure stable housing for herself and her four children. She also acknowledged she could benefit from parenting classes so that she could develop better coping skills.

The DHS worker testified at the hearing that in addition to a lack of suitable housing, the mother had unaddressed mental health issues and possible

substance abuse needs. In addition, the termination record showed the mother did not participate in the services offered to her by the DHS, attending only about half of the scheduled visitations with her children. Moreover, when she did attend visitations they did not always go well; the mother would yell at the children and use physical discipline. The encounters were described as "chaotic." The younger children would cower from their mother and the older children reported they would not feel safe in their mother's care. The mother also was hostile to the DHS workers and harassed the foster family caring for the younger boys. The children's guardian ad litem advocated for termination and recommended the juvenile court suspend visitations with the mother. The record did not provide any evidence these children could have been safely returned home with the mother at the time of the termination hearing. *See D.W.*, 791 N.W.2d at 707 (holding we do not "gamble with the children's future" by asking them to wait for a stable biological parent).

Given these circumstances, I would agree with the juvenile court—this was not a "close case." In the interest of achieving permanency for these children sooner than later, I would affirm on the alternative grounds in sections 232.116(1)(f) and (h)—which were included in the State's petition and proven at trial. I believe such an outcome is in the best interests of the children under the framework in Iowa Code section 232.116(2).