# IN THE COURT OF APPEALS OF IOWA

No. 15-1281
Filed October 28, 2015

**IN THE INTEREST OF A.R., D.R., J.C., AND J.C.,**
**Minor Children,**

**A.M., Mother,**
**Appellant.**
_____

Appeal from the Iowa District Court for Polk County, Colin Witt, District Associate Judge.

The mother appeals the district court's termination of her parental rights to her children, A.R., D.R., J.C., and J.C. **AFFIRMED.**

Erin Carr of Carr & Wright, P.L.C., Des Moines, for appellant mother.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, John Sarcone, County Attorney, and Dominic Anania, Assistant County Attorney, for appellee State.

William Sales of Sales Law Firm, P.C., for appellee father.

Charles Fuson of the Youth Law Center, Des Moines, attorney and guardian ad litem for minor children.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**VOGEL, Judge.**

The mother appeals the district court's termination of her parental rights to her children, A.R., D.R., J.C., and J.C. She asserts the district court should have granted her an additional six months to work towards reunification and it improperly found reasonable efforts had been made to reunite her with the children. We conclude that, due to the mother's lack of progress and the children's need for stability, additional time should not be granted. Moreover, extensive services were offered to the mother and, consequently, her argument that the State failed to make reasonable efforts is without merit. We therefore affirm the district court's order terminating the mother's parental rights.

A.R., born August 2011, D.R., born December 2008, J.C.-1, born December 2005, and J.C.-2, born April 2007, were removed from the mother's care on January 25, 2013.[1] The mother's parental rights to all four children were terminated by the district court on July 19, 2014. The court reasoned:

> 8. The Mother has not addressed any of the reasons for which the children were adjudicated in the CINA cases.
> 9. The Mother has not provided drug screens.
> 10. The Mother has been largely uncooperative with any and all professionals and social workers.
> 11. The Mother's testimony from April 24, 2014 best indicates that she refuses to acknowledge any need for mental health assessment, treatment or counseling.
> 12. The record establishes that over the course of the child welfare cases, she attended approximately half of the visits with her children.
> 13. The bottom line is the Mother has been in large measure actively working against the professionals in this case, unwilling to make any changes in her own life despite obvious need in order for her to be minimally adequate as a parent to one or four children.

---

[1] J.C.-1 and J.C.-2 were placed in the care of their biological father; A.R. and D.R. were later placed in pre-adoptive family foster care. The parental rights of A.R. and D.R.'s father were previously terminated.

*See In re A.R., D.R., J.C., & J.C.*, 865 N.W.2d 619, 621 (Iowa Ct. App. 2015). The mother appealed, and our court reversed, finding the State had failed to prove her rights should be terminated pursuant to Iowa Code section 232.116(1)(d) (2013), which was the only ground on which the juvenile court terminated her rights. *Id.* at 633.

The State again petitioned to terminate the mother's parental rights on May 5, 2015. A termination hearing was held on July 7, in which the mother testified. On July 13, 2015, the district court entered an order terminating the mother's parental rights pursuant to Iowa Code section 232.116(1)(f)—as to J.C.-1, J.C.-2, and D.R.—and (h)—as to A.R. Specifically, it stated:

> 5) [The mother] has refused to engage in services offered to assist in reunification prior to the original termination of parental rights, including refusing transportation assistance, drug treatment, housing assistance, and parenting classes.
>
> 6) The few services [the mother] proved amenable to, including visitation, were highly limited and had to be structured and supervised heavily.
>
> 7) On many occasions, [the mother] sabotaged the visits offered her and instead chose to engage in power struggles with DHS staff.
>
> 8) After termination of parental rights, [the mother] made little effort to maintain a relationship with her children.
>
> 9) [The mother] has been herself placed in a women's shelter as a result of a domestic violence event of which she was the perpetrator.
>
> 10) The victim of this act of domestic violence is her current paramour, with whom [the mother] aims to reside after discharge.
>
> 11) [The mother] has progressed steadily at her current placement at Beacon of Life.
>
> 12) [The mother] has demonstrated the capacity to manage her behavior once she was placed on probation, when she rather than her children face personal consequences for her actions.
>
> 13) [The mother] could not complete all of the requisite batterer's intervention curriculum she has been assigned by the State of Iowa within six months.

14) [The mother] still has not completed any substantial parenting education despite this being an offered and required service since the opening of the underlying CINA case.

It further found the State made reasonable efforts to reunite the mother with the children, and the mother should not be granted an additional six months to work towards reunification. The mother appeals the court's order regarding the latter two issues.

We review termination proceedings de novo. *In re S.R.*, 600 N.W.2d 63, 64 (Iowa Ct. App. 1999). The grounds for termination must be proved by clear and convincing evidence. *Id.* Our primary concern is the child's best interest. *Id.*

With regard to the mother's reasonable-efforts claim, the district court noted:

Reasonable efforts by the State were clearly made prior to the initial termination determination, including offering a plethora of services (nearly all of which were refused or defeated by [the mother]) as well as visitation (which was also hampered by [the mother's] unaddressed mental health issues). It is telling that [the mother] failed to properly request additional services then and now, and in fact spent the majority of the time actively and forcefully refusing any sort of assistance. It is also worth noting that according to court testimony, [the mother] was in fact provided contact information for the children's therapists after termination, and could have used that information to work towards a closer relationship with her children; however, [the mother] instead chose to use this opportunity to harass and verbally assail the therapist, thus perpetuating her cycle of reactive and unmanaged behavior.

The record supports the court's determination. Prior to the July 19, 2014 termination, the State offered the following services to the mother:[2] supervised visitation; individual counseling; family therapy; batterer's education; parenting

---

[2] Prior to the current proceedings, the mother was found to have been the perpetrator in five child abuse assessments. From this record, it is clear a host of services have been provided to the mother since at least 2009.

classes; substance abuse treatment; drug screening; family safety, risk, and permanency services; and transportation assistance. The State ceased offering some of these services once the mother's rights were initially terminated, though the mother still had access to individual counseling and substance abuse treatment. The children's therapist placed the significant trauma the children have suffered squarely on the mother's behavior and cautioned against further visits. The mother was offered ample services over the course of many years; however, she failed to take advantage of them and, in some instances, actively inhibited them. Therefore, we conclude reasonable efforts were made such that termination of the mother's parental rights was appropriate. *See In re C.B.*, 611 N.W.2d 489, 493 (Iowa 2000) (noting that "the reasonable efforts requirement is not viewed as a strict substantive requirement of termination").

Furthermore, we agree with the court the mother should not be granted additional time to work towards reunification. The children have been out of the mother's care since February 2013, and she has yet to make any adequate progress. Rather, the mother has continued to engage in criminal behavior. On December 26, 2014, she was convicted of domestic abuse assault and placed on probation on February 12, 2015; however, the mother violated probation when she threatened to assault the DHS worker.[3] A report of the violation was created on March 11, 2015, which noted the mother was arrested for possession of a

---

[3] The violation report noted the mother:

> [M]ade multiple threatening comments about assaulting her former DHS worker. She stated that if she ran into her she would send her to the hospital and it would be serious with broken bones and plates in her face, and [the mother] would talk to her the whole time during the assault. She also said if she'd known how her DHS case would turn out, she would have jumped her then or followed her home.

controlled substance, operating while intoxicated, operating while her license was suspended, and failure to use headlamps. Given this behavior, it is clear the mother's actions have yet to improve in a manner that would allow her to parent the children. "We have repeatedly followed the principle that the statutory time line must be followed and children should not be forced to wait for their parent to grow up." *In re N.F.*, 579 N.W.2d 338, 341 (Iowa Ct. App. 1998); *see also* Iowa Code § 232.116(2). The mother remains unable to care for the children, and the record makes clear that granting her additional time would not be in the children's best interests.

For these reasons, we affirm the order of the juvenile court terminating the mother's parental rights to her children, A.R., D.R., J.C., and J.C.

**AFFIRMED.**