IN THE COURT OF APPEALS OF IOWA
No. 18-0913
Filed August 1, 2018

**IN THE INTEREST OF J.H. and V.J.,**
**Minor Children,**

**A.M., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Monona County, Mark C. Cord III, District Associate Judge.

A mother appeals the juvenile court's child-in-need-of-assistance permanency order and the termination of her parental rights. **AFFIRMED.**

Zachary S. Hindman of Mayne, Hindman & Daane, Sioux City, for appellant mother.

Thomas J. Miller, Attorney General, and Anagha Dixit, Assistant Attorney General, for appellee State.

Marchelle M. Denker of Juvenile Law Center, Sioux City, guardian ad litem for minor children.

Considered by Vogel, P.J., and Doyle and Bower, JJ.

**BOWER, Judge.**

A mother appeals the juvenile court's child-in-need-of-assistance (CINA) permanency order and the termination of her parental rights. We find sufficient evidence in the record to support the permanency order and termination is in the children's best interests. We affirm the decision of the juvenile court.

## I.    Background Facts & Proceedings

A.M. is the mother of J.H.,[1] born in 2014, and V.J., born in 2017. D.J. is the father of V.J.[2] A.M. had one other child, J.W.H., in 2012, but the state of Missouri terminated her parental rights to J.W.H. prior to this action.

On October 6, 2017, J.H.'s paternal grandmother noticed a significant burn on J.H.'s foot and brought the child to the hospital. Law enforcement was notified, and after determining J.H. had multiple inflicted injuries, immediately removed the children from the parents' care, placing them with the paternal grandmother. A hair stat test on J.H. came back positive for multiple controlled substances.

The parents admitted to the caseworker from the Iowa Department of Human Services (DHS) they had been using multiple controlled substances for some time. The father admitted inflicting the burn on J.H. for a bathroom accident. The mother admitted not noticing J.H.'s injury due to the effects of her use of controlled substances. DHS obtained an emergency removal order on October 9, 2017. The State charged the father with child endangerment, and the court issued a no-contact order barring the father from contact with J.H.

---

[1]  The putative father of J.H. did not participate or object to the termination of his parental rights regarding J.H.
[2]  For purposes of this ruling D.J. will be referred to as the father.

The mother entered an inpatient treatment center in October but was asked to leave after being found with prescription drugs provided by the father. In November, the mother enrolled in another inpatient substance-abuse treatment facility where she was diagnosed with treatable mental illnesses. Following successful inpatient treatment, the mother transferred to outpatient treatment with the same facility on January 13, 2018. On January 16, she left the facility for a court date and did not return. As a result, the facility discharged her on January 26. The mother has a history of founded child abuse or neglect in Colorado in 2014 and 2016 against J.H.

The father also entered inpatient treatment in October but left in November against medical advice. He began an outpatient treatment program, where he was diagnosed with multiple mental-health issues, but he failed to attend regularly and was subsequently discharged.

On November 3, DHS issued founded child abuse or neglect reports against both the parents. The report on the mother noted physical abuse, dangerous substances, presence of illegal drugs, and denial of critical care through failure to provide adequate medical care and supervision to J.H. The founded report also noted the presence of dangerous substances and failure to provide proper supervision for V.J.

On November 16, a combined adjudicatory and emergency removal hearing was held. The father appeared and admitted to substance addiction and intentionally inflicting the injuries on J.H. in response to a normal childhood accident. The mother did not appear or participate in the hearing due to being in

an inpatient treatment facility over 100 miles away. The juvenile court sustained the removal of the children and placed them in foster care.

On January 10, 2018, the juvenile court again sustained the removal of the children and adjudicated the children to be in need of assistance under Iowa Code section 232.2(6)(b), (c)(2), and (n) (2017).

At a February 15 dispositional hearing, where the parents failed to appear, the juvenile court continued the removal and waived the requirement of reasonable efforts at reunification due to aggravated circumstances. On February 16, the State filed a petition for termination of the parents' rights.

On March 15, the court held a permanency and termination hearing. The mother testified she could not immediately resume care of the children. She testified to obtaining housing with the father and about their plans to attend outpatient substance-abuse and mental-health treatment. The mother testified she had not taken any controlled substances since she entered treatment in October.

On May 16, the court terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(d), (g), (i), and (*l*) (2018).[3] The mother appeals.

## II.      Standard of Review

The scope of review is de novo. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Clear and convincing evidence is needed to establish the grounds for

---

[3]  The court terminated the rights of J.H.'s father under Iowa Code section 232.116(1)(b). The court terminated the rights of D.J. under Iowa Code section 232.116(1)(d), (i), and (*l*). Neither father appealed the terminations. However, we discuss D.J.'s treatment to some extent given his ongoing relationship with A.M.

termination. *In re J.E.*, 723 N.W.2d 793, 798 (Iowa 2006). Where there is clear and convincing evidence, there is no serious or substantial doubt about the correctness of the conclusion drawn from the evidence. *In re D.D.*, 653 N.W.2d 359, 361 (Iowa 2002). The paramount concern in termination proceedings is the best interests of the child. *In re K.C.*, 660 N.W.2d 29, 32 (Iowa 2003).

### III.    Sufficiency of the Evidence

Where the district court has cited multiple grounds for termination, we may affirm on any one ground supported by clear and convincing evidence. *D.W.*, 791 N.W.2d at 707. The juvenile court cited section 232.116(1)(d), (g), (i), and (*l*) as grounds for termination. Upon a review of the record, we find grounds for termination exists under section 232.116(1)(d).

Section 232.116(1)(d) allows the court to terminate parental rights where (1) the child or a child from the same family is previously adjudicated CINA due to physical abuse, sexual abuse, or neglect resulting from one or both parents' acts or omissions, and (2) following the adjudication, the parents were offered or received services to correct the circumstance and the circumstance continues to exist. We have noted for purposes of this clause, "previously adjudicated" refers to either a prior or the current proceeding so long as the adjudication was prior to the termination petition. *In re A.R.*, 865 N.W.2d 619, 628 (Iowa Ct. App. 2015), *overruled on other grounds by In re M.W.*, 876 N.W.2d 212, 220–21 (Iowa 2016).

On January 10, 2017, J.H. and V.J. were adjudicated CINA due to a parent or member or the household physically abusing or neglecting the children, or the imminent likelihood of abuse or neglect of the children. In particular, the court found the children at immediate risk of serious harm from their parents. The court

noted the mother has a history of child abuse in other states, and the father admitted to abusing J.H. while the mother was present in the house. Both parents would blackout from drug use. As a result, DHS filed founded child abuse or neglect reports against the parents

The mother admitted to a severe substance-abuse disorder dating back nearly twenty years. She reported that approximately one month after the birth of V.J. she began taking increasing amounts of hard drugs. Immediately prior to the removal of the children, while under the influence of multiple controlled substances, D.J. caused severe burns to J.H.'s feet and inflicted other bruising injuries to J.H. while the mother was in the house. The mother testified she was under the influence of multiple controlled substances at the time and did not hear any cries or screams from J.H. She did not notice any burns or bruises the father inflicted on J.H. Under her care, J.H. was exposed to controlled substances causing the child to test positive for controlled substances in a hair test.

Following the CINA adjudication, the mother has exhibited minimal effort at seeking the mental-health and substance-abuse treatment necessary to regain custody of the children. The children were adjudicated in need of assistance and the mother walked out of her substance-abuse treatment program. She was able to make it to doctor appointments to renew prescriptions but was unable to schedule appointments or reach the facility for substance-abuse and mental-health evaluations.

The parents continue to live together and neither of them are in treatment for substance abuse or mental illness. The mother testified to future plans which all feature being a family with the father and the children, notwithstanding the no-

contact order in place protecting J.H. from the father and both parents' lack of mental-health and substance-abuse treatment. We find the conditions leading to the abuse or neglect of J.H. and V.J. continue despite the offer of substance-abuse and mental-health services to the mother.

We conclude the juvenile court properly determined the mother's parental rights should be terminated under section 232.116(1)(d).

## IV. Extension

The mother requests a six-month extension to work toward reunification with the children. To extend the permanency determination, the juvenile court must be able to "enumerate the specific factors, conditions, or expected behavioral changes which comprise the basis for the determination that the need for removal of the child[ren] from the child[ren]'s home will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b). While the law requires a "full measure of patience with troubled parents," that patience is part of the process of chapter 232. *In re C.B.*, 611 N.W.2d 489, 494 (Iowa 2000). The patience afforded a parent can turn into an intolerable hardship for the children. *In re S.J.*, 620 N.W.2d 522, 526 (Iowa Ct. App. 2000). An extension is only appropriate if the need for removal will no longer exist at the end of the extension. *See In re A.A.G.*, 708 N.W.2d 85, 92 (Iowa Ct. App. 2005).

Although she initially made some progress addressing her substance-abuse problem following the children's removal, the mother made no progress during the two months between the CINA adjudication and the termination hearing. She abandoned her substance-abuse treatment program days after the adjudication and has not been evaluated or treated since. She has not sought any

help for her mental-health issues. She continues to live with the father despite his abuse of J.H. and his continuing substance abuse and mental-health problems. All these factors lead us to the conclusion that another six months will not eliminate the need for the children's removal.

### V.     Best Interests

The mother claims termination of her parental rights is not in the children's best interests. In determining children's best interests, we "give primary consideration to the child[ren]'s safety, to the best placement for furthering the long-term nurturing and growth of the child[ren], and to the physical, mental, and emotional condition and needs of the child[ren]." Iowa Code § 232.116(2); *In re A.S.*, 906 N.W.2d 467, 474 (Iowa 2018). We consider the children's long-range as well as immediate best interests. *In re T.P.*, 757 N.W.2d 267, 269 (Iowa Ct. App. 2008). Once a ground for termination has been proved, we cannot deprive children of permanency on the hope a parent will learn to be responsible and reliable. *In re A.B.*, 815 N.W.2d 764, 777–78 (Iowa 2012).

We find termination of the mother's parental rights to be in the children's best interests. While in the mother's care, the children were exposed to dangerous substances; denied standard medical care; lacked proper supervision; and exhibited developmental delays, which corrected under foster care. We see no evidence the mother is able and willing to protect the children from harm or provide for the physical, mental, and emotional needs of two young children.

For the above reasons, we affirm the decision of the juvenile court terminating the mother's parental rights.

**AFFIRMED.**