In the Interest of T.N.M., A Minor Child,

T.M., Mother, Appellant.

No. 95–978.

Court of Appeals of Iowa.

Nov. 27, 1995.

Catherine A. Pugh of Stein & Russell, Iowa City, for appellant.

Marsha Bergan and Sally Weyer of Bergan & Weyer, Iowa City, attorneys and guardians ad litem for appellee minor child.

Thomas J. Miller, Attorney General, and Kathrine S. Miller–Todd, Assistant Attorney General, for appellee State.

Considered by DONIELSON, C.J., and SACKETT and CADY, JJ.

SACKETT, Judge.

Tina, the mother of Torri, appeals from the juvenile court's order terminating her parental rights. We affirm.

Torri was born in April 1994. At the time of Torri's birth, Tina was sixteen years old and under the jurisdiction of the juvenile court as a child in need of assistance. Tina was estranged from the child's father, who she had never married. He does not challenge the termination of his parental rights.

In December 1994, the State filed a petition seeking termination of the parental rights of both parents. Tina had signed a relinquishment of her parental rights. The State sought termination of parental rights based on the release and then filed an amendment to include additional grounds.

The juvenile court found the relinquishment Tina signed did not comply with the terms of the statute on termination, but terminated on the ground she had abandoned her child.

■ This appeal follows. Tina contends there was not clear and convincing evidence she had abandoned or deserted her child and the child would be at risk of abuse or neglect if returned to Tina's custody. We agree with Tina there is not clear and convincing evidence she abandoned or deserted her child. The child was either in her care or the care of the Department of Human Services, and Tina made efforts to work through problems with the child and to visit with her.

■ We will, however, affirm the trial court if any reason for doing so appears in the record. We are bound to affirm the trial court for any reason, whether argued or not. *See State v. Vincik,* 436 N.W.2d 350, 354 (Iowa 1989). We are obligated to affirm on appeal where any proper basis appears for a trial court's ruling, even though it is not one upon which the court based its holding. *Fankell v. Schober,* 350 N.W.2d 219, 223 (Iowa App.1984).

■ We find on our de novo review there is clear and convincing evidence Tina's parental rights should be terminated under Iowa Code section 232.116(1)(a) (1993) which provides:

1. Except as provided in subsection 3, the court may order the termination of both the parental rights with respect to a child and the relationship between the parent and the child on any of the following grounds:

a. The parents voluntarily and intelligently consent to the termination of parental rights and the parent-child relationship and for good cause desire the termination.

Iowa Code § 232.116(1)(a) (1993).

On June 13, 1994, Tina voluntarily placed Torri with Hillcrest Family Services for pre-adoptive foster care placement. Subsequently, she agreed Torri be found to be a child in need of assistance. On November 4, 1994, Tina signed a release of custody stating (1) she was a parent of Torri; (2) Torri was at least seventy-two hours old; (3) Tina had had independent legal advice and she executed the release of her own free choosing and no one had coerced or threatened her to do so; (4) she had been offered and accepted a minimum of three hours counseling; (5) she acknowledged the purpose of the release was to allow her parental rights to be terminated and to make the child available for adoption; and (6) she understood she may petition the juvenile court in Johnson County within ninety-six hours of signing the document and the

court must order the release revoked, and after ninety-six hours, the court may revoke the release but only if she presents clear and convincing evidence of a good cause to do so.

The State sought termination under these grounds, but the juvenile court found the State could not prevail on these grounds because the mother appeared and contested the termination of her parental rights. The juvenile court found the language of Iowa Code section 232.116(1)(a) required a present desire on behalf of the parent that the parent-child relationship be severed. The juvenile court found the State incorrectly sought to rely on the release of custody signed by Tina and found Iowa Code chapter 232 does not provide a separate ground when a parent signs a release of custody to support a termination of the parent-child relationship.

Iowa Code chapter 232 provides no specific guidance on the requirements for a release that will subsequently support termination of parental rights under section 232.116(1)(a) other than it be intelligent and voluntary.

█ The release Tina gave did comply with the requirements of section 600A.4 in nearly all particulars. We recognize, as did the trial court, termination of parental rights under Iowa Code chapters 600A and 232 are separate and distinct causes of action having different applicability based upon the facts of the situation. *See In re H.J.E.*, 359 N.W.2d 471, 474 (Iowa 1984).

The Iowa Code contains two provisions for the termination of parental rights, chapter 600A and chapter 232, which create separate and distinct causes of action having different applicability based upon the facts of the situation. Chapter 600A provides for voluntary termination of parental rights, allowing a "parent or prospective parent of the parent-child relationship" to petition for termination. Iowa Code section 600A.5(1)(a) (1983). Under chapter 232, only a "child's guardian or custodian, the Department of Human Services, a juvenile court officer, or the county attorney may file a petition for termination of the parent-child relationship . . . ." Iowa Code § 232.111(1) (1983 Supp.). Consequently, a parent cannot initiate termination proceedings under chapter 232.

Chapter 232 is the exclusive means of termination when a child in need of assistance proceeding is in progress. Section 232.109 provides that:

> No such termination shall be ordered except under the provisions of this chapter if the court has made an order concerning the child pursuant to the provisions of division III of this chapter [CINA] and the order is in force at the time a petition for termination is filed.

> Similar language is found in section 600A.5(2): "If a juvenile court has made an order pertaining to a minor child under chapter 232, division III, and that order is still in force, the termination proceedings shall be conducted pursuant to the provisions of chapter 232, division IV."

*H.J.E.*, 359 N.W.2d at 473–74.

█ In the instant case, the child had been adjudicated a child in need of assistance and the dispositional order had not expired. Under these facts, the express provisions of sections 232.109 and 600A.5(2) limit termination proceedings to chapter 232.

To accept the juvenile court's position, we would need to find the only way there can be a termination under section 232.116(1)(a) is for the parent or parents to appear at the time of the termination hearing and affirm a release and/or agree to the termination. We do not so interpret this section. The general scheme of section 232.116(1)(a) (1993) indicates it is the legislature's intention that prior to a termination hearing a parent or parents can sign a written release agreeing to the termination which can be binding if it is in the best interest of the child.

█ Having so decided, the question then becomes whether the written release of custody signed by Tina met fair play, disclosure and due process requirements, and was intelligent and voluntarily given as section 232.116(1)(a) requires.

The trial court found the provisions of section 600A.4 were not met in that the requirements for three hours of counseling under section 600A.4(2)(d) were not complied with nor was the information as to the nine-

ty-six hour period for revocation in compliance with section 600A.4(4).

 We do not interpret section 232.116(1)(a) as requiring a release of custody to comply with all provisions of chapter 600A.

Tina clearly signed an agreement to terminate her parental rights and relinquish custody of her child. The fact she sought to revoke it at the termination hearing is not dispositive; rather, the question is whether it was voluntarily and intelligently made when given and there was good cause for her to desire the termination.

Iowa Code chapter 232 makes no specific provisions for the contents and time of the release as are provided by chapter 600A. The legislature would be best advised to have continuity. Both sections demand some integrity in the release process. However, because chapter 232 is a State action and the Department of Human Services is involved by statute, the two situations are markedly different.

We find the release given complied totally with section 600A.4 (1995) in all particulars but one. We disagree Tina was not advised of the ninety-six hours and the provision to notify the juvenile court in that time frame. That fact is twice spelled out in the release she signed. While Tina stated she had asked for and accepted counseling, there is no showing the specific provision of section 600A.4(2)(g) providing for certification has been met. This is not dispositive.

The provisions of chapter 600A are not controlling in chapter 232, and we do not find under the circumstances there was any over-reaching when Tina signed the release. Tina had had numerous contacts with a number of social workers both employed by the State and in non-profit groups. She had indicated on more than one occasion she was desirous of and/or considering placing the child for adoption. As early as June 1994, when Tina placed the child with Hillcrest Family Services, she did so for adoptive purposes and admitted she had had counseling prior to placing the child at Hillcrest Family Services. In a July 25, 1994 staffing, Tina stated she wanted to voluntarily terminate her parental rights to Torri. Tina had legal counsel when she stipulated Torri could be found a child in need of assistance.

When Tina became involved with Tanager Place, she discussed her decision to place the child for adoption with her counselor and with her social worker. She consistently said she wanted to give the child up for adoption. On November 4, 1994, she signed the release of custody. Not until December 29, 1994, did Tina say she wanted to revoke the release of custody.

Tina clearly recognized on more than one occasion adoption was in her daughter's best interest. Additionally, Tina was only seventeen, had exhibited considerable instability in her life, had not finished high school, had minimal employment, and allowed her child to be placed in a pre-adoptive placement. We find the State proved parental rights should be terminated under section 232.116(1)(a) (1993) by clear and convincing evidence. We affirm.

**AFFIRMED.**