## IN THE COURT OF APPEALS OF IOWA

No. 15-0393
Filed June 10, 2015

IN THE INTEREST OF W.O.-P.,
     Minor Child,

A.O., Mother,
     Appellant,

L.P., Father,
     Appellant.
_____

Appeal from the Iowa District Court for Dubuque County, Thomas J. Straka, Associate Juvenile Judge.


A mother and father appeal separately from the juvenile court order terminating their parental rights. **AFFIRMED ON BOTH APPEALS.**


Patricia M. Reisen-Ottavi, Dubuque, for appellant-mother.

Matthew W. Boleyn of Reynolds & Kenline, L.L.P., Dubuque, for appellant-father.

Thomas J. Miller, Attorney General, Kathrine S. Miller-Todd, Assistant Attorney General, Ralph Potter, County Attorney, and Joshua Vander Ploeg, Assistant County Attorney, for appellee.

Taryn Purcell of Blair & Firtzsimmons, Dubuque, attorney and guardian ad litem for minor child.


Considered by Vogel, P.J., and Potterfield and Mullins, JJ.

**MULLINS, J.**

A mother and father appeal separately from the termination of their parental rights to one child, W.O.-P. The mother contends she withdrew her consent to the termination, and her trial counsel was ineffective. The father contends the district court abused its discretion in denying his motion to continue. Finding no merit in any of the parents' arguments, we affirm on both appeals.

## I. BACKGROUND FACTS AND PROCEEDINGS.

The child came to the attention of the Department of Human Services (DHS) upon her birth in September 2013 when she tested positive for THC. The mother admitted to using methamphetamine and heroin while pregnant. The child remained with the mother, and the mother entered an inpatient treatment program, but she admitted to continuing her drug use while in treatment. She was also ordered not to allow the father to have contact with the child without supervision. After leaving treatment, she re-entered an intimate relationship with the father. The father at that point had only intermittently participated in services.

In June 2014, DHS received a report that the mother and father had been using drugs while caring for the child. A hair stat test on the child was positive for methamphetamine. The court removed the child on June 19, 2014, and placed her with the maternal grandmother. She remained in the care of the maternal grandmother throughout the rest of the case.

In December 2014, the State filed a petition for termination of the mother's and father's parental rights pursuant to Iowa Code section 232.116(1)(e), (h), and (l) (2013). Around this time, the mother admitted to DHS that she was pregnant

again and still engaged in heavy use of intravenous heroin, methamphetamine, and marijuana. She had not attended a visitation since September 2014. Her last substance abuse evaluation was in September 2014; the doctor diagnosed her with severe addictions to opioids, methamphetamine and other stimulants, cannabis, and alcohol. The doctor recommended she obtain intensive substance abuse treatment.

On January 16, 2015, the mother signed a release of custody and consent to termination of parental rights, witnessed by her counsel.[1] At the time of the

---

[1] The consent form provided:

> I, [the mother], am the Mother of [W.O.-P.], born on [date of birth]. I do hereby acknowledge my desire to, for good cause, voluntarily and intelligently consent to the termination of my parent-child relationship with [W.O.-P.]. I acknowledge that in executing this Release and Consent it may be used by the Court to terminate my parental rights pursuant to §232.116(1)(a), Code of Iowa, and that if the Court enters an Order terminating my parental rights the child will be placed for adoption.
>
> I further state that I execute this Release and Consent voluntarily and that no one has made any threats or promises to me to obtain the Release and Consent. I further state that I execute this Release and Consent intelligently and that I understand that when the Court enters an Order terminating my parental rights and my parent-child relationship with [W.O.-P.], that my parental rights will be severed permanently. I state further that I execute this Release and Consent with good cause in that it is my desire and considered judgment that [W.O.-P.] is in need of a permanent placement for adoption and that it is in her best interest that he/she be placed for adoption.
>
> I hereby acknowledge that I understand that the Juvenile Court having jurisdiction of this matter may, upon petition, herein determine whether my parental rights and the parent-child relationship will be terminated, and that facts supporting the Petition must be found established by clear and convincing evidence. I further understand that at any time prior to, or at the time of, the hearing on the Petition for Termination and Parent-Child Relationship and Parental Rights which will be filed by the State in the above-captioned case, I may revoke this Release of Custody and Consent to Termination of Parental Rights. Revocation of the Release and Consent may be accomplished by personally advising, or advising through my attorney, the Court of my desire to revoke the Release and Consent either at the time of the hearing, or prior to the hearing.

termination hearing on February 4, the father was incarcerated in prison and appeared by telephone. Neither the mother nor her attorney appeared. The mother's counsel was unable to attend the termination hearing, so substitute counsel appeared on her behalf and submitted the mother's consent form to the court. Upon receiving the form, the court asked substitute counsel, "[T]o your knowledge, there has been no attempt by [the mother] to revoke this release?" Substitute counsel responded, "No, Your Honor." The court accepted the form as mother's exhibit 1 and granted substitute counsel's request to be dismissed from the hearing. The State made an oral motion to amend its petition to include termination of parental rights under Iowa Code section 232.116(1)(a), by consent of the parent. The court granted this motion.

The father then moved for a continuance, arguing he anticipated being released from prison in April or May and he wanted to be personally present. The court, finding no cause for a continuance, denied the motion. The hearing proceeded, and the court heard testimony and accepted further evidence with respect to the father. The court also admitted the DHS and family safety, risk, and permanency (FSRP) case progress reports. The hearing concluded on February 4, and the court closed the record.

---

The consent was also witnessed by trial counsel. Trial counsel signed the following declaration:

> I, the undersigned witness, do hereby acknowledge that on the 16th day of January, 2015, [the mother] appeared before me and executed this Release of Custody and Consent to Termination of Parental Rights. I acknowledge that prior to [the mother] signing this document, she read it, stated she understood the contents thereof, and [the mother] expressed her desire to execute the Release of Custody and Consent to Termination of Parental Rights.

On February 16, the mother filed a request to re-open the record and to withdraw her consent. The court addressed this request in its termination order. The court found:

> The [termination] release indicates it was executed voluntarily, intelligently, and without any threats or promises. The Release further states:
>> I further understand that *at any time prior to, or at the time of, the hearing* on the Petition for Termination and Parent-Child Relationship and Parental Rights which will be filed by the State in the above captioned case, I may revoke this Release of Custody and Consent to Termination of Parental Rights. Revocation of the Release and Consent may be accomplished by personally advising, or advising through my attorney, the Court of my desire to revoke the Release and Consent either *at the time of the hearing, or prior to the hearing.* (Emphasis added[.])
>
> Mother did not revoke her consent prior to or at the time of the hearing. Mother did not file her Request to Re-Open Record and Withdraw her Release of Custody and Consent to Termination of Parental Rights until February 17, 2015,[2] thirteen days after the record was closed.

The court held there was no authority requiring it to reopen the record and there was no good cause to do so and denied the request.

Relying on the consent form, the court terminated the mother's parental rights pursuant to Iowa Code section 232.116(1)(a) and the father's rights pursuant to section 232.116(1)(e) and (h). The mother and father appeal separately. The mother contends the juvenile court erred in not requiring a verbal or written statement from her trial counsel inquiring into the knowing and voluntary nature of the consent. She further contends her trial counsel rendered

---

[2] We note the motion was filed February 16, 2015, not February 17.

her ineffective assistance. The father contends the juvenile court abused its discretion and should have granted his motion to continue.

## II. STANDARD AND SCOPE OF REVIEW.

We review termination-of-parental-rights proceedings de novo. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). We give weight to the factual determinations of the juvenile court, especially with regard to witness credibility, but are not bound by them. *In re A.B.*, 815 N.W.2d 764, 773 (Iowa 2012). Our primary consideration is the best interest of the child. *Id.* at 776.

We will uphold an order terminating parental rights where there is clear and convincing evidence of the statutory grounds for termination. *In re D.W.*, 791 N.W.2d 703, 706 (Iowa 2010). Evidence is clear and convincing when there is no serious or substantial doubt as to the correctness of the conclusions of law drawn from the evidence. *Id.* When the juvenile court orders termination of parental rights on more than one statutory ground, we need only find grounds to terminate on one of the sections to affirm. *In re J.B.L.,* 844 N.W.2d 703, 704 (Iowa Ct. App. 2014).

## III. ANALYSIS.

### A. MOTHER.

#### 1. Duty to Inquire Whether Consent Was Voluntary and Intelligent.

The court may terminate parental rights pursuant to Iowa Code section 232.116(1)(a) if "[t]he parents voluntarily and intelligently consent to the termination of parental rights and the parent-child relationship and for good

cause desire termination." The mother asserts the court had a duty to solicit a verbal or written statement from the mother's trial counsel as to the knowing and voluntary nature of the consent. She argues, given the court's knowledge of her heavy and ongoing drug use, the court should have inquired into her mental fitness and comprehension at the time of the execution of the consent.

There is little statutory or case law to guide us. In *In re T.N.M.*, 542 N.W.2d 574, 576 (Iowa Ct. App. 1995), this court distinguished the requirements of consent to termination of parental rights when brought under chapter 232 as opposed to chapter 600A. *T.N.M.*, at 576-77. Under Iowa Code chapter 600A, a parent can petition for a voluntary termination of parental rights. *Id.* at 576. In order to terminate parental rights under chapter 600A, the parent must sign a written release of custody, which must contain certain indicia of the voluntariness of the release.[3] Iowa Code § 600A.4. In contrast, chapter 232 "is the exclusive means of termination when a child in need of assistance proceeding is in progress." *T.N.M.*, 542 N.W.2d at 576. Only the child's guardian or custodian, DHS, a juvenile court officer, or a county attorney may initiate a petition to terminate parental rights under chapter 232; a parent cannot. *Id.* In *T.N.M.*, this court specifically concluded, "The provisions of chapter 600A are not controlling in chapter 232." *Id.* at 577. Yet, chapter 232 "makes no specific provisions for

---

[3] These include, among others, acknowledgement of receipt of three hours of counselling and an explanation of the procedure the parent may use to revoke the release. Iowa Code § 600A.4(2)(d); (2)(k), and (4). The release cannot be signed less than seventy-two hours after the birth of the child in interest. *Id.* § 600A.4(2)(g). The parent may revoke the release within ninety-six hours of signing. *Id.* § 600A.4(4). Beyond ninety-six hours, the juvenile court can order a revocation of the release only upon clear and convincing evidence of good cause for revocation, such as fraud, coercion, or material misrepresentation of law or fact. *Id.*

the contents and time of the release" required to support termination under section 232.116(1)(a). *Id.* Further, chapter 600A specifies that, "If a juvenile court has made an order pertaining to a minor child under chapter 232, division III, and that order is still in force, the termination proceedings shall be conducted pursuant to the provisions of chapter 232, division IV." Iowa Code § 600A.5(2). Although the court in *T.N.M.* suggested the legislature provide some continuity between chapters 600A and 232, the legislature has taken no action to do so. 542 N.W.2d at 577. Thus, we are guided by the language and case law of chapter 232 alone.

"Iowa Code chapter 232 provides no specific guidance on the requirements for a release that will subsequently support termination of parental rights under section 232.116(1)(a) other than it be intelligent and voluntary." *Id.* at 576. In *T.N.M.*, a mother in a child-in-need-of-assistance proceeding pursuant to chapter 232 signed a written consent to termination of her parental rights but appeared at the termination hearing and contested the termination. *Id.* The juvenile court declined to terminate under paragraph (1)(a), concluding there had to be a "present desire" of the parent to terminate the parent-child relationship. *Id.* On appeal, this court found, "The fact [the mother] sought to revoke [the release] at the termination hearing is not dispositive; rather, the question is whether it was voluntarily and intelligently made *when given* and there was good cause for her to desire the termination." *Id.* (emphasis added). The court further noted, "The general scheme of section 232.116(1)(a) (1993) [which is identical to Iowa Code 2013] indicates it is the legislature's intention that prior to a

termination hearing, a parent or parents can sign a written release agreeing to the termination which can be binding if it is in the best interest of the child." *Id.* Under the facts in that case, the court concluded the release was voluntary and intelligent when made and affirmed the termination. *Id.* at 577. The court relied on various circumstances in the record, including the mother's repeated indications, both explicit and implicit, that she intended to place the child for adoption and voluntarily relinquish her rights. *Id.* The court required no statement from the attorney as to the mother's state of mind at the time of the signing.

In the unpublished disposition of *In re C.J.*, No. 03-1595, 2003 WL 22701266, at *1 (Iowa Ct. App. Nov. 17, 2003), a father filed a written consent to termination of his parental rights under chapter 232 but appealed asserting for the first time that the consent was not executed voluntarily or intelligently but under duress because he was imprisoned at the time. The court found there was clear and convincing evidence the father's consent was intelligent and voluntary where he signed the consent and affirmed his consent at the termination hearing and he was advised by his attorney regarding the consent. *C.J.*, 2003 WL 22701266 at *1. In another unpublished disposition, *In re K.H.*, No. 04-0192, 2004 WL 573955, at *1 (Iowa Ct. App. Mar. 24, 2004), a consenting mother appealed arguing the juvenile court should have ensured verbally on the record that the consent was knowing and voluntary. The mother did not appear for the termination hearing, but her attorney stated, "[The mother] believes [the consent] is in the best interest of the child and agrees to terminate her rights" and further

assured the court, "I met with [the mother] after she signed the consent to make sure she made an informed decision, and she understands the finality of this." *K.H.*, 2004 WL 573955, at *1. On that record, the court found no basis for a challenge to her consent. *Id.*

Thus, the case law provides there are no specific or formal requirements for the parent's consent to termination under section 232.116(1)(a), other than a determination by the court the parent "voluntarily and intelligently consent[s] . . . and for good cause desire[s] the termination." The mother cites no authority for the imposition of a duty on the juvenile court to inquire of the trial attorney as to the voluntary and knowing nature of the consent. We find no authority for such a duty and decline to impose one. The court only had to find that the consent was made voluntarily and intelligently and with good cause in order to find termination appropriate under paragraph (1)(a). The court did so. The mother also makes no present challenge or assertions that the waiver was involuntarily or unintelligently given. Therefore, we need not address that question. We only conclude the court did not err by not requiring a verbal or written statement from the mother's trial counsel as to her mental fitness or comprehension at the time of the execution of the consent. The court found the release indicated it was executed voluntarily, intelligently and without any threats or promises, and that it could be revoked at any time prior to or at the time of the termination hearing. The consent was not revoked at or before the hearing, and the court found the State had met its burden of proof to terminate the mother under section 232.116(1)(a).

The mother further complains that the court denied her motion to reopen the record on an improper basis. She asserts the court denied the motion because the mother cited no good cause or authority. She argues the motion was a "notice-pleading" requesting an opportunity to be heard and that she did not need to set out any authority or grounds. We review denials of motions to reopen the record for an abuse of discretion. *In re J.R.H.*, 358 N.W.2d 311, 318 (Iowa 1984). The mother cites Iowa Rule of Juvenile Procedure 8.4, which provides, "Any motion filed with the juvenile court shall be promptly brought to the attention of the judge or referee by the moving party." This rule does not support her argument. She also cites Iowa Rule of Civil Procedure 1.431(3) which provides, "A concise memorandum brief citing supporting authorities may be served in accordance with rule 1.442(4)." This is a rule regarding service of motions. It does not support the mother's argument that she had no duty to cite any grounds or authority in support of her motion. Further, Iowa Rule of Civil Procedure 1.431(1) specifically provides a motion "is not a 'pleading'."

Nonetheless, the mother did set out a ground for reopening the record. The relevant part of the motion, states:

> [The mother] contacted the undersigned [trial counsel] on February 13, 2015, requesting to revoke her previous Release of Custody and Consent to Termination of Parental Rights . . . . [She] requests and prays that this Court re-open the record regarding the termination of parental rights hearing, and the mother be allowed to revoke her Release of Custody and Consent.

There was no assertion in the motion that the consent was involuntary or unintelligently given or that there was a change in the good-cause assertion that was in her written consent. Upon reviewing the record, the court determined the

mother's attempt to revoke her consent was untimely and without good cause; therefore, there was no need to reopen the record. The court denied the motion. We cannot find that decision was unreasonable or based on untenable grounds. There was no abuse of discretion.

## 2.      Ineffective Assistance of Counsel.

The mother further contends her trial counsel was ineffective in failing to make an assessment of her fitness when executing her consent, not appearing at trial or providing an additional assessment to the court, and failing to include the argument that the consent was involuntary in the motion to reopen the record.

We review constitutional claims de novo. *In re C.M.*, 652 N.W.2d 204, 209 (Iowa 2002). "[D]ue process requires counsel appointed under statutory directive to provide effective assistance." *In re D.W.*, 385 N.W.2d 570, 579 (Iowa 1986). Although the sixth amendment is not implicated here, the test for ineffective assistance of counsel in termination proceedings is the same as that used in criminal proceedings. *In re A.R.S.*, 480 N.W.2d 888, 891 (Iowa 1992). The parent must show (1) counsel's performance was deficient, and (2) actual prejudice resulted. *C.M.*, 652 N.W.2d at 207. Counsel has no obligation to raise a meritless issue. *Id.*

The mother cannot prove she was prejudiced by any of counsel's alleged failures. The State's petition alleged her rights should be terminated under Iowa Code section 232.116(1)(e) and (h). The mother has not proved she would have prevailed in countering the evidence in support of termination under paragraphs (e) and (h). She states no facts or circumstances in the record that would have

resulted in an outcome other than termination of her parental rights under one of the above sections. Accordingly, we find the mother failed to show she was actually prejudiced by trial counsel's alleged failures. Trial counsel was not ineffective.

### B. FATHER.

The father contends the juvenile court abused its discretion in not granting his motion to continue so that he could be present and be considered as a viable placement for the child. "A motion for continuance shall not be granted except for good cause." Iowa R. Juvenile P. 8.5. We review the juvenile court's decision on a motion to continue for an abuse of discretion. *In re C.W.*, 554 N.W.2d 279, 281 (Iowa Ct. App. 1996). We reverse only if injustice will result to the party desiring the continuance. *Id.* DHS reported the father had not been engaged in any services since August, six months prior to the termination hearing. Prior to August, he was minimally involved in services. For most of the case he had actively avoided DHS workers, service providers, and his own attorney. Consequently, he had not received any assistance in ending his substance abuse addiction nor had he participated in any drug tests. He had not attended visitation with the child since July, seven months before. DHS reported he had never expressed a desire to see the child or addressed any of his issues so that she might be returned to his care. At the time of the termination hearing, he was in prison. It is clear the father has made no efforts on behalf of this child. There is nothing to indicate circumstances would change if the court continued the hearing to a later date. There was no good cause for a continuance and the

father would suffer no injustice. Accordingly, the court did not abuse its discretion in denying the motion.[4]

## IV. CONCLUSION.

We conclude the court did not have any duty to solicit a verbal or written statement from the mother's trial counsel as to the voluntary and intelligent nature of the consent where the court determined the mother did not revoke her consent prior to the termination hearing. We further find trial counsel was not ineffective. With respect to the father, we find there was no good cause for the requested continuance; therefore, the juvenile court did not abuse its discretion in denying the motion. We affirm termination as to both appeals.

**AFFIRMED ON BOTH APPEALS.**

---

[4] The father makes a number of complaints attempting to excuse his failure to participate in ordered services. These complaints are of no avail as well as untimely. *See In re S.R.*, 600 N.W.2d 63, 65 (Iowa Ct. App. 1999) (parent has the obligation to demand different or additional services the parent may require prior to the termination hearing); *In re C.H.*, 652 N.W.2d 114, 148 (Iowa 2002) (parent must request additional services at the appropriate time or waives the challenge).