# IN THE COURT OF APPEALS OF IOWA

No. 24-1556
Filed December 18, 2024

**IN THE INTEREST OF H.L.,**
**Minor Child,**

**STATE OF IOWA,**
     Appellant and Appellee,

**J.W., Father,**
     Appellant

**A.T., Mother,**
     Appellee

_____

Appeal from the Iowa District Court for Guthrie County, Virginia Cobb, Judge.

A father appeals the termination of his parental rights, and the State appeals the dismissal of its petition to terminate the mother's parental rights. **AFFIRMED ON BOTH APPEALS.**

Brenna Bird, Attorney General, and Michelle R. Becker, Assistant Attorney General, for appellant State.

Jason Burdick, West Des Moines, for appellant father.

Donna M. Schauer of Schauer Law Office, Adel, for appellee mother.

Maria Kordick of Baxter & Wild Law Offices, P.C., Guthrie Center, attorney and guardian ad litem for minor child.

Gina E.V. Burress of Carr Law Firm P.L.C., Des Moines, attorney for minor child.

Considered by Tabor, C.J., and Ahlers and Sandy, JJ.

**TABOR, Chief Judge.**

H.L. and her mother Angela have been involved with the Iowa Department of Health and Human Services since 2020. During that time, Angela has often been incarcerated but is now on parole. The juvenile court dismissed the petition to terminate her parental rights to seven-year-old H.L., finding the State failed to prove abandonment and the department failed to make reasonable efforts to facilitate their reunion. The State appeals the dismissal of its petition. On our de novo review, we affirm.

In the same order, the juvenile court terminated the parental rights of Jeffrey, who was not identified as H.L.'s father until she was three years old. The court focused on his unresolved substance-use and mental-health conditions. He appeals. Because he did not cooperate with services or develop a bond with H.L., we affirm the juvenile court's decision about Jeffrey as well.

## I.    Facts and Prior Proceedings

H.L. was born in 2017 while Angela was in prison. So Angela placed H.L. with Tracy, whom she believed to be H.L.'s paternal grandmother. Angela was released from prison and resumed custody in 2019. But she returned to jail on drug charges in September 2020. This time, the department took custody of H.L. and placed her with Tracy again. The juvenile court adjudicated H.L. as a child in need of assistance (CINA) that November.

Then, in December 2020, paternity testing showed Tracy's son was not H.L.'s father. Yet H.L. stayed with Tracy as fictive kin. In March 2023, the department received reports of drug use in Tracy's home. It removed H.L. and

placed her with other fictive kin,[1] where she has remained. Angela was paroled in February 2024 and moved to a halfway house, where children were not allowed to live with their parents. While incarcerated, Angela has had visits with H.L. facilitated by Tracy, the placement family, and Angela's adult daughter. Other interactions have been held over the phone and videoconferencing.

Paternity testing identified Jeffrey as H.L.'s father in April 2021. At that time, he reported a history of mental-health impairment including a diagnosis of schizophrenia for which he was not taking medication. He also reported self-medicating with marijuana and he had a criminal history. The juvenile court ordered Jeffrey to obtain mental-health and substance-use evaluations and submit to periodic drug testing. From the start, Jeffrey struggled to comply with the court's orders. He did not obtain the evaluations or submit to drug testing, and he never provided medical records on his mental-health condition.

The department offered Jeffrey supervised visits. At first, the visits were held in his home with his wife and teenage son.[2] But the department moved them to public locations when it learned he took H.L. upstairs alone.[3] On the last visit, Jeffrey yelled at the supervising worker and refused to let her into his home. Jeffrey also posted about the department on social media, calling the workers

---

[1] Although determined not to be genetically related, the fictive kin placement still regards H.L. as her "niece."

[2] Jeffrey and his wife have three children, two of whom are adults. Jeffrey also has an older daughter from a previous relationship. He lost his parental rights to the oldest daughter, but they remained in contact and she testified for him at the termination hearing.

[3] Jeffrey testified he took H.L. upstairs to look at the bedroom he had prepared for her. But while upstairs they were "roughhousing," and H.L. kicked him. He testified he "grabbed her arm" and left "[n]o bruises," but "it was a hurt to her pride."

"monsters," and discussed the CINA case and other inappropriate topics in front of H.L. The department suspended visits in September.

In October, the court ordered visits to resume with the condition of having two or more supervisors present. But in January 2024, the service provider cut the visit short when Jeffrey had an outburst in front of H.L. at the public library. As the placement and service provider took H.L. to the car, Jeffrey followed, yelling profanities and calling them "fucking bitches." The court again suspended his visits and, after a hearing, allowed them to resume by videoconference only.

Also in January 2024, the State petitioned to terminate both parents' rights. The petition alleged statutory grounds to terminate for both parents under Iowa Code section 232.116(1), paragraphs (d), (e), and (f) (2024). For Angela, the State also relied on paragraph (b). The court held a termination trial in April. At the trial, the department case manager and H.L.'s therapist testified, along with Angela, Jeffrey, the placement, Jeffrey's daughter, and Jeffrey's wife.

Jeffrey testified that he failed to cooperate with the department because of his personal history of having been the subject of a CINA proceeding as a teenager and because he lost parental rights to an older daughter. He also discussed his schizophrenia, admitting that he does not take prescribed drugs but instead self-medicates with marijuana. According to his testimony, he is now willing to submit to drug testing, cooperate with the department, and engage in mental-health and substance-use treatment.

After the trial, the court dismissed the petition as to Angela, finding the State did not offer clear and convincing evidence that she abandoned or deserted H.L. under paragraph (b). The court also found the department did not make

reasonable efforts "with regard to visitation and other services" for Angela.  As for Jeffrey, the court found the State offered clear and convincing evidence to meet the statutory grounds for termination under paragraphs (d), (e), and (f).  The court declined to apply the permissive factors under section 232.116(3), finding "no evidence that termination would be detrimental to [H.L.] as there is not a significant bond between the father and the child."  Jeffrey appeals those aspects of the ruling.  And the State appeals the dismissal of the petition as to Angela.

## II.      Scope and Standard of Review

We review termination proceedings de novo.  *In re L.B.*, 970 N.W.2d 311, 313 (Iowa 2022).  On de novo review, "we examine the whole record, find our own facts, and adjudicate rights anew."  *In re M.H.*, 12 N.W.3d 159, 160 (Iowa Ct. App. 2024) (citation omitted).  We respect the juvenile court's factual findings, especially when they rest on witness credibility.  *In re R.K.B.*, 572 N.W.2d 600, 601 (Iowa 1998).  But we are not bound by them.  *Id.*  Our primary concern is the best interests of the child.  *Id.*

## III.     Discussion

In termination cases, the juvenile court follows a three-step analysis.  *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).  First, it must decide whether the State proved by clear and convincing evidence a ground for termination from Iowa Code section 232.116(1).  *Id.*  Second, it considers whether termination was in the child's best interests under the framework of section 232.116(2).  *Id.*  Third, if the State meets those two prongs, it considers the permissive exceptions in section 232.116(3).  *Id.*  On appeal, we review only steps that are raised and briefed by

the party challenging the juvenile court's order. *See In re D.S.*, No. 24-0364, 2024 WL 3051355, at *2 (Iowa Ct. App. June 19, 2024).

### A. Mother

#### 1. Statutory Ground for Termination

On that first step, the State appeals the juvenile court's dismissal of its petition against the mother that urged termination under Iowa Code section 232.116(1), paragraphs (b), (d), (e), and (f). The juvenile court decided the State did not meet its burden to prove abandonment under paragraph (b). But the court addressed no other ground. And the State did not ask the court to rule on paragraphs (d), (e), or (f) in a post-trial motion. *See* Iowa R. Civ. P. 1.904(2). Still, the State urges us to find that it met its burden under paragraphs (d) and (f)[4] and asserts that it preserved error by raising four grounds in its petition. But raising issues—without receiving a ruling—fails to preserve them for appeal. *See Meier v. Senecaut*, 641 N.W.2d 532, 537 (Iowa 2002). True, a prevailing party in a termination-of-parental-rights action need not file a rule 1.904(2) motion to assert an alternative ground for affirmance on appeal that was raised before the juvenile court. *See In re M.W.*, 876 N.W.2d 212, 221 (Iowa 2016). But the preservation rule is different for the losing party. *See Stammeyer v. Div. of Narcotics Enf't of Iowa Dep't of Pub. Safety*, 721 N.W.2d 541, 548 (Iowa 2006) ("If there are alternative claims or defenses, and the district court does not rule on all alternative claims or defenses, the losing party must file a posttrial motion to preserve error

---

[4] The State does not contend that it proved the elements of abandonment under paragraph (b) or failure to maintain significant and meaningful contact under paragraph (e).

on the claims or defenses not ruled on.").  The State failed to preserve error under paragraphs (d) and (f) and does not contest the juvenile court's ruling addressing paragraph (b), so we affirm the court's finding that the State proved no ground for terminating the mother's parental rights.[5]

### 2. Reasonable Efforts

Next, the State challenges the juvenile court's ruling that the department did not make reasonable efforts to reunify Angela with H.L.[6]  The court emphasized that the department "has not provided Angela with any services, instead, Angela has availed herself of numerous classes while incarcerated to improve herself. Angela was not provided with the knowledge that she could be involved in her daughter's therapy or method for doing so."  Indeed, the case manager testified that the department provided no services to the mother while she was incarcerated.  And the department was unaware of what classes or treatment the mother obtained in prison because it did not ask.

Because the juvenile court decided the State did not prove grounds for termination, we need not address whether the efforts the department made on Angela's behalf to reunite her with her daughter were reasonable.

---

[5] Generally, we have an obligation to affirm on appeal if there is a supported ground, even one not relied on by the juvenile court.  *See In re T.N.M.*, 542 N.W.2d 574, 575 (Iowa Ct. App. 1995).  We cannot use that rule to reverse and order termination where the juvenile court did not.

[6] Reasonable efforts at reunification are required in every case unless the court waives the requirement.  Iowa Code § 232.102(4)(b); *In re L.M.W.*, 518 N.W.2d 804, 807 n.1 (Iowa Ct. App. 1994) (noting reasonable-efforts mandate requires agency to make reasonable efforts "to reunify families *in each case*" (emphasis in original)).

### 3. Best Interests and Statutory Exception

For its final two arguments, the State steps through the best-interests analysis under section 232.116(2) and the exceptions to termination under section 232.116(3). Because the court did not terminate Angela's rights and did not rule on those steps, we decline to address them. *See Meier*, 641 N.W.2d at 537. As our bottom line, we affirm the dismissal of the petition as to Angela.

### B. Father

### 1. Statutory Ground for Termination

On Jeffrey's appeal, he contends the juvenile court erred in terminating his rights under paragraphs (d), (e), and (f). To affirm, we need only find the record sufficient to terminate on one ground. *See In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). We focus on paragraph (f), which requires proof that the child (1) is four years of age or older; (2) has been adjudicated as a CINA; (3) has been removed from home for the last twelve straight months; and (4) cannot be returned to the parent's care at the present time.[7] Iowa Code § 232.116(1)(f). As to the last

---

[7] Under the final prong of ground (f), the State must show the child cannot be returned to the parent's custody "as provided in section 232.102." Iowa Code § 232.116(1)(f)(4). Our case law describes the meaning of that element in two ways. *See id.* § 232.102(4)(b) (discussing transfer of a child's legal custody if staying in the home would be "contrary to the welfare of the child"). Many cases cite *In re M.M.*, 483 N.W.2d 812, 815 (Iowa 1992), which quotes section 232.102(4)(a)(2)—then-numbered section 232.102(5)(b)—for the proposition that custody should be transferred only if the court finds "the child cannot be protected from some harm which would justify adjudication of the child as a child in need of assistance and an adequate placement is available." *See, e.g.*, *In re M.S.*, 889 N.W.2d 675, 680 (Iowa Ct. App. 2016). But our supreme court often describes that element as the inability to "safely return" children to their parents' care. *See, e.g.*, *In re T.W.*, No. 20-145, 2020 WL 1881115, at *2–3 (Iowa Ct. App. Apr. 15, 2020) (collecting cases). Under either approach, the State met its burden of proof.

element, Jeffrey argues no evidence was presented that H.L. was in danger of physical abuse or harm from him or anyone in his household.

We disagree with that characterization of the record. Jeffrey has an untreated mental-health condition and testified he has active auditory hallucinations. He also admitted medicating with marijuana. He refused to do drug testing or seek mental-health treatment until the eleventh hour. He has a history of criminal convictions including assault while displaying a dangerous weapon, harassment, and possession of a controlled substance. And because he could not control his emotional state, he lost visitation with H.L. in his home, then twice more until he could only have video interactions. Thus, visitations regressed rather than progressed. On that record, we agree with the juvenile court that the State showed H.L. could not be safely placed in his custody.

### 2. Statutory Exception

Jeffrey next contends that termination is "not in the child's best interests and was not appropriate due to the bond between child and parent." Despite the reference, Jeffrey does not cite the statutory "best interests" standard. *See* Iowa Code § 232.116(2) (giving priority "to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child"). He only discusses the statutory exception at section 232.116(3)(c), so we restrict our discussion to that issue. *See P.L.,* 778 N.W.2d at 40 (recognizing that we need not address any step of the termination analysis the parent does not challenge).

The parent bears the burden to prove a statutory exception. *In re A.S.,* 906 N.W.2d 467, 476 (Iowa 2018). To thwart termination, Jeffrey must show "clear and

convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." Iowa Code § 232.116(3)(c). Jeffrey points out that he wasn't involved in the CINA case until H.L. was three years old. He complains about the lack of in-person contact. And he asserts H.L. displayed "an age-appropriate reluctance to participate" in videoconferences. At the trial, Jeffrey testified, "No kid wants to do video visits. You can't play. You can't parent."

Jeffrey overlooks the fact that his actions led to the court limiting his visits to videoconferencing. What's more, his admission that it was "difficult to establish a bond" with H.L. by video visits reveals the truth that he has little connection with her. H.L.'s therapist testified that the child's relationship with Jeffrey is "distant" and "shallow," and that H.L. reports not wanting to visit her father. The placement reported that after visits H.L. is agitated and has sleep disturbances, nightmares, outbursts, and feelings of sadness and being overwhelmed. Finding little if any bond exists between Jeffrey and H.L., we conclude H.L. would not suffer harm through termination of his parental rights.

Finding no grounds to reverse the juvenile court, we affirm on both appeals.

**AFFIRMED ON BOTH APPEALS.**