# IN THE COURT OF APPEALS OF IOWA

---

No. 26-0240
Filed June 24, 2026

---

**In the Interest of L.M. and B.M., Minor Children,**

**A.M., Father,**
Appellant,

**A.B., Mother,**
Appellant.

---

Appeal from the Iowa District Court for Polk County,
The Honorable Brent Pattison, Judge.

---

**AFFIRMED ON BOTH APPEALS**

---

Shireen L. Carter of Shireen Carter Law Office, PLC, Norwalk, attorney for appellant father.

Shannon L. Wallace of Youth Law Center, Des Moines, attorney for appellant mother.

Brenna Bird, Attorney General, and Mackenzie Moran, Assistant Attorney General, attorneys for appellee State.

Teresa Pope of Pope Law, PLLC, Des Moines, attorney and guardian ad litem for minor children.

---

Considered without oral argument
by Greer, P.J., Sandy, J., and Vogel, S.J.
Opinion by Sandy, J.

**SANDY, Judge.**

A mother and father separately appeal the termination of their parental rights to their two children. Although the mother consented to the termination of her parental rights at the termination trial, she argues on appeal that the State failed to prove by clear and convincing evidence that her consent was voluntary and intelligent. Both the mother and father argue the termination of their parental rights is not in the children's best interests. The mother asserts two permissive exceptions to termination, and the father requests a six-month extension to work towards reunification. After our de novo review of the record, we affirm the juvenile court's order terminating the mother's and father's parental rights.

## BACKGROUND FACTS AND PROCEEDINGS

The mother and father have two children together: B.M., born in April 2022, and L.M., born in February 2024. The children were removed from their parents' home in October 2024 by the Iowa Department of Health and Human Services (HHS) after receiving a report that both parents were allegedly using methamphetamine while caring for the children. Neither parent contested removal. Shortly after the removal, father consented to a drug test and tested positive for methamphetamine, cocaine, and MDMA. The mother refused to take a drug test. The children were placed with their paternal grandmother.

In December, the children were adjudicated to be children in need of assistance (CINA), and both parents stipulated to the adjudication. Both children tested positive for exposure to controlled substances. There was also a domestic violence incident between the parents, and a no-contact order was put into place. Both parents began seeking substance-use assessments and treatment, agreeing that they needed help. A dispositional hearing was held

in late January 2025. While both parents continued to express a willingness to participate in services, they had not done so at the time of the hearing. The mother tested positive for methamphetamine and was recommended for inpatient treatment. The mother refused, but she and the father agreed they needed to continue to work on their substance-use, domestic-violence, and mental-health issues to make progress toward reunification.

The mother was accepted into recovery court (colloquially, drug court) in January 2025 and was an active participant, along with some outpatient treatment. The father also began treatment at this time. While there was some progress made by the parents at the July review hearing, the mother admitted she had begun using methamphetamine again. Both parents were having contact with one another despite the no-contact order, and neither parent was participating in mental-health services. When a permanency hearing was held in October, both parents were still actively using methamphetamine. The mother and father were both struggling to address their unhealthy relationship. Prior to the October permanency hearing, the mother was charged with stabbing the father's sister while at the father's home. The juvenile court determined that "one year into the case, the parents were in essentially the same position as they were at the time of removal."

A termination trial was held on January 8, 2026. At the hearing, the mother's attorney informed the court and the parties that the mother consented to the termination of her parental rights to both children. A written consent to termination signed by the mother had been filed with the court before the termination hearing. The mother, however, did not want to come into the courtroom during the termination trial. The mother's counsel made

a representation to the court and vouched that the mother's consent to terminate was voluntary and intelligent.

The only evidence offered during the termination trial were the exhibits and docketed reports from the CINA and termination proceedings. The juvenile court terminated the mother and father's parental rights, and the children were placed with their paternal grandmother. Both parents now appeal.

## STANDARD OF REVIEW

"We review termination of parental rights proceedings de novo." *In re J.H.*, 952 N.W.2d 157, 166 (Iowa 2020). "While we are not bound by the juvenile court's factual findings, we accord them weight, especially in assessing witness credibility." *Id.*

## DISCUSSION

We use a three-step process to determine whether (1) a statutory ground for termination has been established, (2) termination is in the child's best interests, and (3) any permissive exceptions to termination should be applied. *In re A.B.*, 957 N.W.2d 280, 294 (Iowa 2021). If a parent does not challenge a step, we need not address it. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010).

"When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the juvenile court's order on any ground we find supported by the record." *In re A.B.*, 815 N.W.2d 764, 774 (Iowa 2012). The juvenile court terminated the mother's parental rights to both children under Iowa Code section 232.116(1)(a), (h), and (*l*) (2025). The juvenile court terminated the father's parental rights to both children under

5

section 232.116(1)(h) and (*l*). The father does not challenge the statutory grounds of termination of his parental rights.

## I. Statutory Ground

The juvenile court terminated the mother's parental rights under Iowa code section 232.116(1)(a), which provides that the court may terminate parental rights if "[t]he parent[] voluntarily and intelligently consent[s] to the termination of parental rights and the parent-child relationship and for good cause desire[s] the termination." The mother does not dispute that she voluntarily signed a consent form to terminate her parental rights. She argues the State did not prove by clear and convincing evidence that grounds exist for the termination of her parental rights under section 232.116(1)(a) because she did not testify at the hearing or reaffirm her consent at the hearing.

The mother, however, has failed to preserve error as she raises the issue of lack of voluntary and intelligent consent for the first time on appeal. We have previously held that a father failed to preserve error on his claim of voluntary and intelligent consent of termination because he raised the issue "for the first time on appeal," and that "[t]he proper method to preserve error [was] to file a motion for a new trial under Iowa Rule of Civil Procedure 1.1004(7) . . . or to file a petition pursuant to rule 1.1013." *See In re A.C.-B.*, No. 16-0106, 2016 WL 1366865, at *2 (Iowa Ct. App. Apr. 6, 2016). "[T]he general rule that appellate arguments must first be raised in the trial court applies to CINA and termination of parental rights cases." *A.B.*, 815 N.W.2d at 773.

Even if error was preserved, we could not grant the relief the mother seeks. The mother asks us to read additional requirements into section 232.116(1)(a). But section 232.116(1)(a) contains no requirement for a parent to testify at the termination trial or that a colloquy must occur for

consent to be voluntary and intelligent. Instead, it provides the court with the ability to terminate parental rights when "[t]he parent[] voluntarily and intelligently consent[s] to the termination of parental rights and the parent-child relationship and for good cause desire[s] the termination." Iowa Code § 232.116(1)(a). Our court has held, "[t]he general scheme of section 232.116(1)(a) indicates it is the legislature's intention that prior to a termination hearing a parent . . . can sign a written release agreeing to the termination which can be binding if it is in the best interest of the child." *In re T.N.M.*, 542 N.W.2d 574, 576 (Iowa Ct. App. 1995). We decline to read additional requirements into section 232.116(1)(a), as an "absent provision cannot be supplied by the courts." Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 94 (2012).

We have a consent form to terminate parental rights that was signed by the mother and filed on the same day as the termination trial. It was filed because the mother declined to attend the termination trial in person. At the trial, the mother's attorney made a representation to the court that the mother consented to the termination of her parental rights. The attorney also represented that she explained what the termination of the mother's parental rights entailed. Despite what the mother argues in her brief, the record indicates she voluntarily and intelligently consented to the termination of her parental rights at the time of termination. *See T.N.M.*, 542 N.W.2d at 576. We therefore cannot grant the relief she requests and affirm the ground for termination.

## II. Best Interests

The mother and father both argue that termination was not in the best interests of the children. Iowa Code section 232.116(2) provides that when deciding "whether to terminate the rights of a parent under this section, the

court shall give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Accord P.L.*, 778 N.W.2d at 37.

The children have been removed from the parents' care since October 2024, which is a significant portion of their young lives. The parents have failed to meaningfully participate in services offered by HHS throughout the proceedings. They made little progress with their respective substance-use issues and were both still actively using methamphetamine in the months leading up to the termination trial. Both parents struggle to address domestic violence issues, and the mother was charged with stabbing the father's sister in the fall 2025. We can glean what is best for the children's future based on parents' past performance. *In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000). As the juvenile court thoughtfully reasoned:

> Neither parent has demonstrated they are willing or able to fulfill this parental role. They are both young parents who are still learning how to address their own needs and cannot be the kind of parents these two young children need now. They love the children—but they are not in a position to care for them long term. And it is not in these children's best interest to continue to suspend the crucial days of childhood while the parents continue to struggle.

We arrive at the same conclusions here. Termination is in the children's best interests.

## III. Permissive Exception

"Once we have established that the termination of parental rights is in the children's best interests, the last step of our analysis is to determine whether any exceptions in section 232.116(3) apply to preclude the termination." *In re M.W.*, 876 N.W.2d 212, 225 (Iowa 2016). The mother

asserts that two exceptions to termination under section 232.116(3) apply: "(a) [a] relative has legal custody of the child[ren]" and "(c) [t]here is clear and convincing evidence that the termination would be detrimental to the child[ren] at the time due to the closeness of the parent-child relationship."

The father makes a single, general citation to section 232.116(3), but presents no argument as to why or how it should apply. We, therefore, consider the issue waived by the father. *See In re J.R.*, No. 22-1470, 2023 WL 2148760, at *3 (Iowa Ct. App. Feb. 22, 2023) ("We re-affirm that 'random mention of [an] issue, without elaboration or supportive authority, is insufficient to raise the issue for our consideration.'") (quoting *Soo Line R.R. Co. v. Iowa Dep't of Transp.*, 521 N.W.2d 685, 691 (Iowa 1994)).

True enough, B.M. and L.M. have been placed with their paternal grandmother, but HHS had legal custody during these proceedings. Section 232.116(3)(a) does not apply when the children are in the legal custody of HHS and merely placed with a relative. *See, e.g.*, *In re A.B.*, 956 N.W.2d 162, 170 (Iowa 2021). Additionally, as our supreme court has expressed, "[a]n appropriate determination to terminate a parent-child relationship is not to be countermanded by the ability and willingness of a family relative to take the child. The child's best interests always remain the first consideration." *In re A.S.*, 906 N.W.2d 467, 475 (Iowa 2018) (citation omitted). It is not in the best interests of the children to return to the care of their mother. Given the mother's lack of progress made toward reunification, continued substance use, alleged violence towards the father's sister, and our permanency concerns given the children's ages, we decline to apply the permissive exception set out in section 232.116(3)(a).

Finally, the mother argues she has a very close parent-child relationship with both children and it would be detrimental to both children

to sever their relationship. But the record does not reflect this, and the stability and permanency the grandmother is able to provide for the children serves the best interests of the children. This is especially true given the mother's lack of progress made toward reunification and infrequent visitation with the children, continued drug use, and alleged violence toward the father's sister. We have no doubt the parents love their children. But a parent's love for their children is not enough to prevent termination. *See In re D.W.*, 791 N.W.2d 703, 709 (Iowa 2010). We decline to apply the permissive exception set out in section 232.116(3)(c).

## IV. Six-Month Extension

The father argues he should be granted a six-month extension to work toward reunification in lieu of the termination of his parental rights. We may deny termination and give the father an additional six months to work toward reunification only if the need for removal "will no longer exist at the end of the additional six-month period." Iowa Code § 232.104(2)(b); *id.* § 232.117(5) (permitting the court to decline termination and enter an order under section 232.104); *see In re W.T.*, 967 N.W.2d 315, 323 (Iowa 2021). We must also consider whether further delay is in the children's best interests. Iowa Code § 232.116(2).

The father has shown little progress on his substance use issues, and the record shows there was recent and ongoing use of methamphetamine near the time of the termination trial. There are also concerns about domestic violence. Although the father was generally forthcoming about the issues he was struggling with throughout the life of this case, he only sporadically engaged in services offered by HHS. We must consider whether further delay of permanency is in the children's best interests. Given how young the children are and their need for permanency, as well as the record's indicia

that the father's struggles will still exist in six months, we decline to grant the requested extension.

Accordingly, we affirm on each parent's appeal.

**AFFIRMED ON BOTH APPEALS.**